Larry Lee MARTIN, Appellant

v.

COMMERCIAL METALS COMPANY, General Motors Corporation, Interstate Battery System of America, Inc., and Johnson Controls, Inc., Appellees.

No. 05–03–00641–CV.

Court of Appeals of Texas, Dallas (5th Dist.).

July 6, 2004.

Larry Lee Martin, Seagoville, pro se.

Walter D. James, Dallas, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

Larry Lee Martin appeals the summary judgment entered against him and in favor of appellees Commercial Metals Company ("CMC"), General Motors Corporation ("GMC"), Interstate Battery System of America, Inc. ("IBSA"), and Johnson Controls, Inc. ("JCI"). For the reasons discussed below, we affirm the judgment of the trial court.

### Parties to Appeal

Martin has prosecuted his appeal pro se, purporting to represent himself and other individuals. Some number of the putative appellants are (or were at the time of filing) minors, and Martin purports to represent those individuals as "next friend." However, only Martin is named in the notice of appeal filed in this case; no other adults or minors are identified by name in that notice. *See* TEX.R.APP. P. 25.1(d)(5) (notice must contain name of each party filing the notice). Moreover, only Martin signed the notice of appeal and the brief filed in this Court. *See also* TEX.R.APP. P.

9.1 (unrepresented party must sign any document that the party files).

■ On another level, we note that, by drafting and signing the notice and brief under his own name on behalf of others, Martin has effectively attempted to practice law. *Jimison v. Mann,* 957 S.W.2d 860, 861 (Tex.App.-Amarillo 1997, no writ). Although rule 44 of the rules of civil procedure provide for guardian-like conduct by a "next-friend," the rule "does not grant unlicensed persons authority to practice law under the auspices of 'next friend.'" *Id.* The Clerk of this Court wrote a letter to Martin, requiring him to state the basis for his purported representation of minors as their "next friend" on appeal. Martin made no satisfactory response.

We conclude that only Martin has successfully appealed the judgment of the trial court, and only Martin is appropriately before this Court as an appellant.

*Background* [1]

Martin filed suit on May 13, 2002, alleging personal injuries to himself and others, purportedly caused by exposure to toxic substances released by the RSR Corporation's secondary lead smelter in Dallas. CMC, GMC, IBSA, and JCI, defendants below and appellees in this Court, were suppliers of raw materials to the smelter. Appellees sold scrap metal—used products containing lead—to the operators of the smelter. The scrap metal was then recycled as the smelting process extracted the lead. The smelting process also generated toxic byproducts. Some of those byproducts were released into the nearby community in the form of soot and gas; some were buried at the site, where they leached and migrated through the soil. In December 1989, the smelter was closed and the site was cleaned up pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). Appellees were parties to the consent decree that assigned responsibility for that cleanup.

Martin's initial pleading sought damages from CMC and other unnamed defendants for personal injuries to himself and three minors as a result of the release of toxic substances from the smelter operation and site. Ultimately, Martin's live pleading included a reference to his symptoms, medical tests, and diagnoses from December 1998. Over time, more plaintiffs were added to the case and more defendants were named. The record indicates only five defendants were served and answered: the four appellees and an entity named Exide Technologies ("Exide"), which plays no part in this appeal.[2]

Through a series of motions for summary judgment and partial motions for summary judgment, appellees moved for dismissal of all claims against them below, arguing two grounds: (1) Martin's claims were barred by limitations, and (2) no act by any appellee caused Martin any injury. The trial court resolved all motions in appellees' favor, and consolidated all its rul-

---

1. In accordance with summary judgment procedure, we set forth undisputed facts and—where facts are in dispute—the non-movant's version of those facts.

2. Exide has declared bankruptcy. The trial court severed all claims against the four appellees and entered final judgment on those claims in its September 2, 2003 Final Order. On October 3, 2003, the trial court entered its Order Abating and Closing Case, which administratively closed, but did not dismiss, the case against Exide; that case remains subject to being re-opened on motion of any party. These two orders have been added to the original record at the request of this Court; they are contained in the Supplemental Clerk's Record filed on May 21, 2004.

ings in a final judgment without specifying a particular ground for its rulings.

Martin appealed, identifying six issues for our consideration. Appellees have not filed a brief.

### Discovery Oversight

■ In his fourth issue, Martin complains that the trial court abused its discretion "by failing to enforce his pre-trial order requesting discovery be conducted pursuant to Rule 190" of the rules of civil procedure. We understand Martin to be making two complaints under this heading: (1) the trial court failed to compel discovery or impose sanctions when CMC made "abusive" responses to Martin's interrogatories and requests for disclosure, and (2) Martin was not permitted adequate time for discovery before the summary judgment motions were submitted and decided. We review the trial judge's discovery rulings under an abuse of discretion standard. *Avary v. Bank of America, N.A.,* 72 S.W.3d 779, 787 (Tex.App.-Dallas 2002, pet. denied).

■ As to the first complaint, Martin's brief states no more than that he sent interrogatories and a request for disclosure to CMC, but, according to Martin:

> each attempt was abused by defendant CMC, the Plaintiffs' filed two Motion[s] for abuse of the discovery process and order compelling discovery sanctions, which still [has] not been answered.

Martin then cites to a list of seven "exhibits," which are included in his appendix on appeal. The list includes documents that purport to be correspondence between Martin and appellees' counsel, Martin's discovery requests and the offending responses, and Martin's motions for sanctions. However, none of these documents are in the appellate record. Nor, does the record include any ruling on Martin's motions.

Martin's summary briefing on this issue falls far short of "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex.R.App. P. 38.1(h). Moreover, without necessary information in the record, the Court cannot know how Martin's inquiries were made, what information was disclosed by CMC, and what objections or exemptions were raised by CMC. Finally, the supreme court has directed that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." *Remington Arms Co., Inc. v. Caldwell,* 850 S.W.2d 167, 170 (Tex. 1993). Martin certainly knew of the alleged misconduct by CMC before trial. Yet nothing in the record indicates Martin set his motions for hearing or otherwise sought a ruling on them from the trial court. If the trial court refused to rule on the motions, then Martin was required to object to that refusal. The record contains no such objection. By failing to obtain a pretrial ruling, or to object to a refusal to rule, Martin waived any objections to these matters on appeal. *See id.* (party waives objections to discovery misconduct by failing to request pretrial hearing); *see also* Tex.R.App. P. 33.1(a)(2) (prerequisite for appellate review is ruling by trial court or objection by party on court's refusal to rule).

As to his second discovery-related complaint—that he was afforded inadequate time for discovery before the summary judgment procedure—the record does contain two motions for continuance premised on Martin's purported need to conduct

more discovery.[3] The second motion and Martin's brief set forth some eight categories of discovery that Martin alleges were "material to the Plaintiffs' claims against defendants." But again, Martin obtained neither a ruling from the trial court nor an objection to the court's refusal to rule, the prerequisites to a complaint on appeal. *See Remington Arms Co.*, 850 S.W.2d at 170; *see also* Tex.R.App. P. 33.1(a)(2).

■ Moreover, Martin has not shown us any way in which the categories of discovery he sought would lead to information that was relevant to the grounds of the summary judgment motions. Thus, even if we were to assume without deciding that Martin was entitled to more discovery than he received, or to more time to seek that discovery, he has utterly failed to show how any of the information he sought could have changed the outcome of the summary judgment process. In other words, Martin has failed to show how he was harmed by the lack of further discovery.[4]

For all these reasons, we cannot say the trial court abused its discretion in overseeing the discovery process. We decide Martin's fourth issue against him.

### Summary Judgment Rulings

■ Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990); *Jorden v. Ensign–Bickford Co.*, 20 S.W.3d 847, 849 (Tex.App.-Dallas 2000, pet. denied). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the non-movant as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We indulge every reasonable inference in favor of the non-movant and resolve any doubt in his favor. *See id.* In addition, we accept as true evidence in support of the motion if not controverted. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Jorden*, 20 S.W.3d at 849. When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base judgment on any ground asserted in the motion. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

Martin's first three appellate issues address appellees' limitations ground. Martin urges that various tolling theories require exceptions to the typical accrual and expiration of the two-year limitations period associated with claims for personal injury. His fifth issue argues that he identified genuine issues of material fact on the causation ground that were sufficient to defeat the motions. We conclude the causation ground suffices to uphold the trial court's judgment.

■ To establish causation in a personal injury suit, a plaintiff must prove that the defendant's conduct caused an event, and that this event caused the plaintiff to suffer compensable injuries. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). The components of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830

---

**3.** Martin has not raised the specific issue of the continuance in this Court.

**4.** We note that Martin makes his argument for discovery under rule 166a(i), but appellees did not file 166a(i) motions. Instead, appellees took on the burden of disproving an element of Martin's case (i.e., causation) and establishing an affirmative defense (i.e., limitations) as a matter of law.

S.W.2d 94, 98 (Tex.1992).[5] An act or omission is a cause in fact of an injury if it is a substantial factor in bringing about the injury, without which the harm would not occur. *Id.* Cause in fact is not shown if the defendant's conduct did no more than furnish a condition which made the injury possible. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). "In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause." *Id.* (citing *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex. 1995); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991)). If causation is negated as a matter of law, then the moving party is entitled to a summary judgment. *See Lear Siegler, Inc.,* 819 S.W.2d at 471–72.

Each of the defendants moved for summary judgment on the ground that it did not cause the plaintiffs' injuries because it did not own, operate, or exercise any control over the smelter operation or site. Martin does not contest those facts. Yet Martin argues that he raised two genuine issues of material fact in response to the defendants' summary judgment motions on causation: whether the presence of toxic materials in the area of the smelter was the proximate cause of his injuries, and whether the defendants' sale of used lead products "caused and/or contributed to" the contamination of the smelter site.

Again, to establish causation in a personal injury case, a plaintiff has a two-step burden: he must prove that (1) the conduct of the defendant caused an event, and (2) this event caused the plaintiff to suffer compensable injuries. *See Burroughs Wellcome Co.,* 907 S.W.2d at 499. In Martin's case, his burden at trial would be to prove that (1) the conduct of appellees caused toxic materials to be released from the smelter into the West Dallas neighborhood where he lived, and (2) the release of toxic materials from the smelter caused Martin to suffer compensable injuries. The second step of this inquiry comports with Martin's first question above, i.e., "whether the presence of toxic materials in the area of the smelter was the proximate cause of his injuries." However, for summary judgment purposes, appellees have not challenged this part of the causation inquiry. Thus, we assume for purposes of summary judgment that Martin's injuries were caused by exposure to the smelter's byproducts.

Appellees *have* challenged the first step of the inquiry, i.e., whether Martin can establish that appellees' conduct caused toxic materials to be released from the smelter. Again, Martin alleges that he raised a genuine issue of material fact on the question "whether the defendants' sale of used lead products 'caused and/or contributed to' the contamination of the smelter site." We stress initially that "contributing to" an injury is not the appropriate standard for establishing legal cause under Texas law. To be the cause in fact of Martin's injury, appellees' conduct must have been a substantial factor in bringing about Martin's injury, without which the harm would not have occurred. *See Travis,* 830 S.W.2d at 98. We conclude that appellees' summary judgment evidence established that they did not own or operate or control the smelter. This evidence was

5. In some of his pleadings, Martin attaches labels other than negligence to his personal injury claims. However, regardless of what such a claim is called, Texas law requires proof of either proximate or producing cause. In both instances, recovery requires proof of causation in fact. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995).

sufficient to negate the element of causation alleged by Martin.

Once appellees had established their lack of control over the smelter, Martin could avoid summary judgment only by offering evidence that raised a genuine issue of material fact concerning appellees' having caused his injury. In other words, Martin had to show that there was a causal link between appellees' selling scrap metal to the smelter's operators and the release to of toxic byproducts into the environment. Absent such a link, there is no causation issue for a jury to decide, making summary judgment appropriate.

 The record indicates Martin submitted no summary judgment evidence in response to appellees' motions. Martin's response relies upon the CERCLA consent decree as summary judgment evidence of causation.[6] However, Martin's reliance on the language and standards of CERCLA or other federal environmental law to establish causation is misplaced: that law is directed toward the unique ends of cleaning up hazardous sites and apportioning costs for the clean-up. Its standards are very different from the standard of common law negligence in Texas. Thus, contrary to Martin's assertions, the CERCLA consent decree is no evidence that appellees were the cause in fact of Martin's injuries under Texas law.

Martin's response makes a passing reference to his own earlier-filed affidavits. We have reviewed all of Martin's sworn statements in the record. We conclude none of those statements addresses the causation issue.

 Finally, Martin's response refers to the Affidavit of Donald C. Francis, which is captioned in a different lawsuit, and which was attached to Martin's amended petition. Generally, pleadings are not summary judgment evidence. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). However, even if we were to consider the Francis affidavit, it would not advance Martin's cause. The affidavit offers testimony only against bankrupt defendant Exide, which was the *owner* of the smelter after 1987. But none of the appellees owned the smelter at any time. Thus, the Francis affidavit does not assert—or even imply by analogy—that any appellee was responsible for the infliction of injury on Martin or anyone else.

We conclude that, under the facts of this case, the mere selling of raw materials does not constitute the kind of control over the enterprise necessary to establish a causal connection between the supplier and the ultimate emission of toxic materials by the processor of those materials. Sale of the scrap metal did no more than "furnish a condition which made the injury possible," and that is insufficient to establish cause in fact. *See Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 477. Appellees negated the element of causation as a matter of law, and Martin did not raise a genuine issue of material fact on that ground. Accordingly, appellees were entitled to summary judgment. We decide Martin's fifth issue against him.

### Province of the Jury

 Martin's sixth and final issue argues that the trial court erroneously invaded the jury's historic function when it granted summary judgment on his claims. Martin cites no legal authority in support of this argument, and we find no legal basis for the argument. The right to a jury trial in civil cases is not absolute. *See, e.g., Green v. W.E. Grace Mfg. Co.,* 422 S.W.2d 723, 725 (Tex.1968). The sum-

---

6. The consent decree was part of appellees' summary judgment proof.

mary judgment process provides a method of terminating a case when only questions of law are involved and there are no genuine issues of fact. *See Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 150 (Tex.App.-Texarkana 2002, pet. denied). The process will not deprive litigants of a jury trial where material questions of fact exist. However, if there is nothing to submit to a jury, then the grant of summary judgment cannot violate a party's constitutional right to a jury trial. *See id.*

We have already concluded that the trial court correctly granted summary judgment in favor of appellees in this case because—on the element of causation, at a minimum—there was no genuine issue of material fact. We decide Martin's sixth issue against him as well.

Given our resolution of these issues, we affirm the judgment of the trial court.