MEMORANDUM OPINION









 

 

 

 

 

 

 

 

 

MEMORANDUM OPINION

 

No. 04-05-00768-CV

 

Nancy
ORTEGON,

Appellant/Cross-Appellee

 

v.

 

Enrique BENAVIDES,
Jr., M.D,

Cross-Appellant

 

&

 

Enrique BENAVIDES,
Jr., M.D.; Mercy Health Systems of Texas, 

Laredo Medical Center, as Successor in Interest of Mercy Health Center, and 

Mercy Hospital of Laredo d/b/a Mercy Health Center,

Appellees

 

From the 111th
Judicial District Court, Webb County, Texas

Trial Court No. 2003-CVQ-001399-D2

Honorable Raul
Vasquez, Judge Presiding

 

Opinion by:     Rebecca Simmons, Justice

 

Sitting:            Catherine Stone, Justice

                        Karen Angelini, Justice

                        Rebecca Simmons, Justice

 

Delivered and
Filed:  March 5, 2008 

 

AFFIRMED

 

This
medical malpractice case stems from an operation wherein Appellee Dr. Enrique
Benavides, Jr. (“Benavides”) performed a vaginal hysterectomy and anterior
repair on Appellant Nancy Ortegon (“Ortegon”).  The procedure was performed at Mercy
Health Systems of Texas (“Mercy Hospital”).  During the operation, numerous
complications developed and Benavides ultimately had to re-open the sutures to
retrieve a surgical sponge.  

The
trial court granted a directed verdict in favor of Benavides and Mercy Hospital with regard to all claims other than the res ispa loquitor claims of
negligence against Benavides relative to the sponge retrieval.  On the sole
issue of negligence, the jury found in favor of Benavides.  Ortegon raises
several issues on appeal:  the trial court erred in granting the directed
verdict; defense counsel’s comments were incurable error; and the trial court
erred in failing to grant a new trial.  Additionally, Ortegon’s Motion to Late
Designate Points or Issues to Be Presented on Appeal was carried with the
appeal.  We deny Ortegon’s motion to late designate and affirm the judgment of
the trial court.

Factual Background

Benavides
operated on Ortegon on March 5, 2002, performing a vaginal hysterectomy and
anterior repair.  During the surgery, Ortegon suffered excessive blood loss and
Benavides elected not to complete a posterior repair.  After discovering that a
surgical sponge was left inside, Benavides re-opened Ortegon’s incision to
retrieve the sponge.  According to Benavides, it was standard procedure, taking
only a matter of minutes, and the same incision was opened and resealed.  

After
surgery, Ortegon was very weak, her kidneys, lungs and heart began to fail, and
she showed signs of shock and anemia, ultimately requiring resuscitation.  As a
result of the continued life-threatening complications, tests were performed
indicating a perforation or obstruction of the bowel.  Benavides consulted with
several specialists, including Dr. Robert Maddox (“Maddox”).  On March 22nd,
Benavides and Maddox performed a “small bowel resection, involving two inches
of bowel on either side of the perforation.”    

            The jury
trial commenced on August 8, 2005.  After Ortegon rested, the trial court
granted defendants’ joint motion for directed verdict on all of the claims
except Ortegon’s negligence claims against Benavides based on res ipsa loquitor
and the damages flowing therefrom.  On August 17, 2005, the jury returned a
verdict in favor of Benavides on the sole remaining issue.

Motion to
Late Designate

            In order to determine the correct presumption to apply when
considering the partial record before us, we address Ortegon’s Motion to Late
Designate Points or Issues to Be Presented on Appeal, filed on May 10, 2007.   A
brief chronology of events is in order.  On January 24, 2006, Ortegon requested
a partial reporter’s record consisting of testimony from Plaintiff’s expert Dr.
Gerald Bullock, Defendant Dr. Benavides, Dr. Robert Maddox, and Nurse Aldape. 
Ortegon, however, failed to include the required statement of points or issues
to be presented on appeal pursuant to Texas Rule of Appellate Procedure
34.6(c)(1).  Due to inordinate delay by the court reporter, the partial record
was not filed until September 29, 2006.  Ortegon filed her brief raising seven
issues on appeal on January 3, 2007.  Benavides filed his responsive brief on
April 4, 2007.  

In response, Benavides discussed the partial record and
lack of a statement of issues which therefore precluded the application of a
complete record presumption pursuant to Texas Rule of Appellate Procedure 34.6(c)(4). 
Benavides argued the applicable presumption is that the omitted portions of the
record support the judgment of the trial court.  The appeal was “at issue” and
ready for submission on April 9, 2007.  As a result of Benavides’s arguments,
Ortegon filed Appellant’s First Motion for Extension of Time to File Reply Brief,
and Motion to Late Designate Points or Issues to be Presented on Appeal on May
10, 2007.  Accompanying this motion was an explanation to the court that
Ortegon had contacted the court reporter requesting prompt preparation and
transmittal of additional portions of the reporter’s record not previously
submitted.  

This court subsequently requested a response from
Benavides addressing any prejudice arising from Ortegon’s delay in filing the Rule
34.6(c) statement.  On May 17, 2007, Benavides filed his response claiming no
prejudice with regard to the medical malpractice claims, but asserting prejudice
with regard to the remaining appellate issues.  By order of this court, dated
May 25, 2007, Ortegon’s motion was carried with the appeal.  On May 30, 2007, eight
days after Ortegon filed her reply brief, and one day after
Benavides filed his surreply, the court reporter filed a supplemental
reporter’s record that included Ortegon’s testimony.

            An appellant must make a written request that the official
reporter prepare the reporter’s record, designating the exhibits and portions
of the proceedings to be included in the record. Tex. R. App. P. 34.6(b)(1).  A copy of this request must be
filed with the trial court clerk.  Tex. R.
App. P. 34.6(b)(2).  A partial reporter’s record is available in order
to minimize the expense and delay associated with the appellate process.  Tex. R. App. P. 34.6(c)(1); see Christiansen
v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam).  An appellant
who requests a partial record must also include a statement of appellate issues
to be presented and will be limited on appeal to those points or issues.  See
Tex. R. App. P. 34.6(c)(1).  Rule
34.6(c)(4) affirmatively states that the partial record is presumed to be
complete.  Tex. R. App. P.
34.6(c)(4).  Yet, when an appellant entirely fails to present the statement of
points or issues, then the presumption that the record is complete for
appellate purposes does not apply, and the appellate court applies the
presumption that the material missing from the reporter’s record is relevant
and supports the trial court’s judgment.  Richards v. Schion, 969 S.W.2d
131, 133 (Tex. App.―Houston [1st Dist.] 1998, no pet.) (“When an
appellant appeals with a partial reporter’s record but does not provide the
list of points as required by Rule 34.6(c)(1), it creates the presumption that
the omitted portions support the trial court's findings.”) 

            Recently,
in W & F Transp., Inc. v. Wilhelm, 208 S.W.3d 32, 38 (Tex.
App.─Houston [14th Dist.] 2006, no pet.), the court explained that the
purpose of Rule 34.6(c) is to protect an appellee from having to defend an
appeal from a partial record devoid of a part that may support its defense. 
The statement of issues mandated by Rule 34.6(c) provides the appellee with
notice of the issues being appealed in a timely manner so as to allow the
appellee to designate additional portions of the record it may deem necessary
for its case.  Tex. R. App. P. 34.6(c). 
“Compliance with the rule . . . affords the opposing party an opportunity to
designate additional material to be included in the statement of facts which it
deems relevant to the issues on appeal, as defined by appellant.”  Superior
Packing, Inc. v. Worldwide Leasing & Fin., Inc., 880 S.W.2d 67, 70
(Tex. App.─Houston [14th Dist.] 1994, writ denied).  “Absent such a
specific statement [of points or issues], the Appellee is left to guess which
additional portions of the evidence should be included in the statement of
facts.”  Gardner v. Baker & Botts, L.L.P., 6 S.W.3d 295, 296-98
(Tex. App.─Houston [1st Dist.] 1999, pet. denied).

             Ortegon
admittedly did not file a timely statement of appellate issues; however, that
alone does not resolve this point.  We must determine whether any prejudice
resulted from a late filed statement.  The supreme court rejected a
“strict compliance” approach with regard to Rule 34.6 and instead determined
the proper question, in considering a late statement of the issues, was whether
the appellee had been prejudiced.  Bennett v. Cochran, 96 S.W.3d 227,
229 (Tex. 2002) (per curiam).  While acknowledging the importance of Rule
34.6’s statement of issues, the court affirmed its prior commitment that the
rules of appellate procedure be applied to address a party’s meritorious
claim.  Id.  In doing so, the court approved a statement of issues that
had been filed two months late, holding:

Here, the
objective behind Rule 34.6(c)(1) was fully served. [Appellee] does not allege
that he was deprived of an opportunity to designate additional portions of the
reporter’s record, nor does he assert that [appellant’s] delay otherwise
prejudiced the preparation or presentation of his case. Under these
circumstances, we hold that Rule 34.6 does not preclude appellate review of
[appellant’s] legal and factual sufficiency issues.

 

Id. at 230. Thus, a late-filed statement of points or issues is sufficient to
maintain the presumption that the record is complete unless the appellee shows
the late filing of the statement would prejudice him.  Id. at 229-30.  

            In
the present case, Benavides concedes that with regard to Ortegon’s medical
negligence issues, the only evidence necessary for the determination of the
issues is expert testimony.  Because Ortegon initially requested the testimony
of the medical experts – Bullock, Benavides and Maddox – Benavides concedes
that the original appellate record, as requested by Ortegon, is adequate.  With
regard to the fraud and failure to disclose allegations, Benavides asserts
these allegations require the testimony of Ortegon regarding what she was told
by Benavides and the staff of Mercy Hospital.  The supplemental reporter’s
record containing Ortegon’s testimony was not filed until months after briefing
was completed and the case was at issue and ready for submission.  Benavides
asserts allowing the late designation of these issues will irreparably harm and
prejudice him because he was unable to fully and properly respond to such
issues in his briefing as he was without the benefit of Ortegon’s testimony. 
We agree. 

            This
case is easily distinguishable from Bennett because Ortegon’s late
request to designate issues on appeal was made several months after briefing
was completed by all three parties.  In Bennett, the appellee had more
than two months after he received notice of the appellant’s statement of issues
to supplement the record and file his brief.  Id. at 229.  Here, Ortegon’s
request to file a statement of issues was made after briefing was complete and
the case was at issue.  Thus, Benavides’s appellate posture would be impaired
by such a late filing. 

To
allow such a late filing of the statement of points or issues on appeal would
go against the spirit of the rules of appellate procedure.  In this case, Ortegon
elected to proceed on a partial record.  Benavides responded and addressed the
merits of the same urging this court to apply the appropriate presumption.  Importantly,
the supplemental record containing Ortegon’s testimony was filed over a month
after Benavides’s brief was submitted.  Our rules of appellate procedure are
not designed to allow an appellant to brief an issue, wait for the appellee to
point out the problems with their briefing and then, after the case is at
issue, allow the appellant to bring forward additional issues on appeal and a
supplemental record.  Accordingly, Ortegon’s motion for late designation is denied.


Directed
Verdict

            Ortegon complains the trial court erred in granting a
directed verdict on both her negligence and non-negligence claims.   

A.        Standard of Review

In
reviewing the granting of a directed verdict, we follow the standard of review
for assessing the legal sufficiency of the evidence.  See City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005) (stating that the test
for legal sufficiency should be the same for summary judgments, directed
verdicts, judgments notwithstanding the verdict, and appellate no-evidence
review).  A directed verdict for a defendant is appropriate when the plaintiff
does not present evidence raising a fact issue essential to the plaintiff’s
right of recovery or when a plaintiff admits or the evidence conclusively
establishes a defense to the plaintiff’s cause of action.  Prudential Ins.
Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  The
trial court should consider all the evidence in the light most favorable to the
party against whom the verdict was instructed, crediting favorable evidence if
reasonable jurors could and disregarding contrary evidence unless reasonable
jurors could not.  City of Keller, 168 S.W.3d at 827.  In doing so, the
trial court should direct a verdict when reasonable minds can draw only one
conclusion from the evidence.  Vance v. My Apt. Steak House, Inc., 677
S.W.2d 480, 483 (Tex. 1984).  

Ortegon
contends the trial court erred in granting a directed verdict on her negligence
claims because she presented sufficient evidence that Benavides’s conduct was
negligent.[1] 
To reverse the trial court’s grant of the directed verdict, Ortegon must establish
that she presented some evidence on each and every element of her negligence claims.

B.                
Medical Malpractice

Ortegon
contends the trial court erred in granting a directed verdict on her negligence
claims because she presented sufficient evidence that Benavides’s conduct was
negligent and that his negligence caused her injuries.  Specifically, Ortegon
alleges that she presented expert witness testimony sufficient to establish:
(1) the applicable standard of care; (2) that Benavides breached that standard;
and (3) that the breach caused her injuries.

            In a
medical negligence case, the plaintiff must prove, by competent expert
testimony, that the defendant’s breach of duty proximately caused the
plaintiff’s injuries.  Duff v. Yelin, 751 S.W.2d 175, 176 (Tex. 1988); Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1966).  On the causation
element, the plaintiff is required to show evidence of a reasonable medical
probability that the injury was proximately caused by the breach of the
defendant.  Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508,
511 (Tex. 1995); Duff, 751 S.W.2d at 176.  Through expert testimony, the
plaintiff must prove:

(1) A duty by the physician to act
according to a certain standard of care;

(2) A breach of that standard of
care;

(3) An injury; and

(4) A causal connection between the
breach of care and the injury.

 

Morrell v.
Finke, 184 S.W.3d 257, 271 (Tex. App.─Fort Worth 2005, pet. denied). 


            The
threshold question in a medical malpractice case is the standard of care.  Jones
v. Miller, 966 S.W.2d 851, 854 (Tex. App.─Houston [1st Dist.] 1998,
no pet.).  The applicable standard must be established so the fact finder can
decide if the defendant deviated.  Id.  In medical malpractice cases,
the standard of care must be established by expert testimony unless the mode or
form of treatment is a matter of common knowledge or is within the experience
of a layman.  Jackson v. Axelrad, 221 S.W.3d 650, 655 (Tex. 2007).

            To
establish proximate cause, a plaintiff must prove both (1) cause-in-fact, and
(2) foreseeability.  Duff, 751 S.W.2d at 176.  Cause-in-fact requires
the plaintiff to establish a causal connection between the injuries suffered
and the defendant’s breach of duty based upon “reasonable medical probability,”
not mere conjecture, speculation, or possibility.  See Park Place
Hosp., 909 S.W.2d at 511.  The ultimate standard of proof on causation is “whether,
by a preponderance of the evidence, the negligent act or omission is shown to
be a substantial factor in bringing about the harm and without which the harm
would not have occurred.”  Kramer v. Lewisville Memorial Hosp., 858
S.W.2d 397, 400 (Tex. 1993).  Importantly, reasonable probability is determined
by the substance and context of an expert’s opinion, and does not turn on
semantics or on the use of a particular term or phrase.  Arlington Mem’l
Hosp. Found., Inc. v. Baird, 991 S.W.2d 918, 922 (Tex. App.─Fort
Worth 1999, pet. denied) (citing Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 500 (Tex. 1995)).  

Ortegon
alleges negligence in three different counts: (1) Benavides negligently cut
Ortegon’s bowel when he retrieved the sponge; (2) Benavides and Mercy Hospital negligently left a surgical sponge in Ortegon, and (3) Benavides negligently
failed to timely diagnose and treat Ortegon’s cut bowel.

Bullock
testified that when a large cavity is opened, it is a breach of the standard of
care to close a patient prior to a full count of the surgical sponges. 
Additionally, he testified that Benavides’s failure to properly diagnose and
treat Ortegon’s cut bowel was negligence that proximately caused her severe
damages.  Bullock’s testimony can be summed up as follows:

1.      Benavides
cut Ortegon’s small bowel during the March 5th surgery, proximately causing her
resulting injuries, but this action was not necessarily negligent depending on
when the perforation occurred.

2.      The
vaginal hysterectomy was difficult.  If the punctured bowel
occurred during the vaginal hysterectomy and not during the retrieval of the
sponge, there was no breach of care.

3.      If
Benavides cut Ortegon’s bowels when he reopened to retrieve the sponge, he
was negligent and thus proximately caused all of Ortegon’s injuries.

4.      Benavides
breached the standard of care when he closed Ortegon’s incision prior to a
complete sponge count.

5.      Bullock
could not testify to a “reasonable degree of medical probability” whether
Benavides cut Ortegon’s intestines during the vaginal hysterectomy or during
the sponge retrieval.

 

1.         Bowel
Damage During Sponge Retrieval

Benavides
argues that there is a “fatal gap” in the chain of causation.  He asserts
Bullock’s opinions on causation were never linked to any breach of the standard
of care.  We agree.

Without
question, Ortegon was very ill and suffered a number of complications as a
result of her surgery.  The record on appeal consists only of the testimony of
Bullock, Benavides, Maddox and Nurse Aldape.[2] 
According to Bullock, if the bowel was cut during the hysterectomy, there was
no negligence.  If, on the other hand, the bowel was cut during the sponge
retrieval, then Benavides deviated from the standard of care and was
negligent.  Thus, we look to the record to determine if there is any evidence
of when, or if, the cut occurred.  The record, however, contains no direct
evidence of when, or even if, the bowel was punctured during surgery rather
than perforated as a result of an obstruction.  In an attempt to establish that
the cut occurred during the sponge retrieval, Ortegon points to Benavides’s
trial testimony:

Q:  Okay.  Doctor, I want you to answer the next question based on a
reasonable degree of medical probability.  During the vaginal hysterectomy and
before you reopened the cuff to retrieve the sponge, did you cause any injury
to Mrs. Ortegon’s bowel?

 

A:  No I did not.  

 

From this
testimony, Ortegon concludes that if the puncture, or injury, did not occur
during the hysterectomy, then it must have taken place during the sponge
retrieval and this is sufficient evidence, combined with Bullock’s testimony,
to support Benavides was negligent.  

Benavides
asserts his testimony is taken out of context as he actually testified that he
did not injure or perforate the bowel at any time.  Benavides
asserts the evidence supports the conclusion that the bowel was not perforated
during the first surgery, but instead due to an obstruction which perforated
shortly before the bowel repair surgery on March 22nd.  We agree that
Benavides’s testimony does not amount to an admission that the perforation
occurred during the sponge retrieval.  Throughout trial, Benavides denied that
he cut the bowel during the sponge retrieval.  The refusal to admit injury to
Ortegon during the hysterectomy does not require a conclusion that a
perforation took place during the sponge retrieval.  

There
is no evidence in the record that Benavides breached the standard of care
because Bullock could not state that the bowel was perforated during the sponge
retrieval procedure.  Through numerous questions, propounded by multiple
attorneys, Bullock affirmatively stated that based on reasonable medical
probability, the injury occurred on March 5th.  Whether it occurred during the
hysterectomy or during the sponge retrieval, however, he could only testify
based on possibility rather than probability.  Bullock could only testify that
it was his “gut feeling” that the injury to the bowel occurred during the
hysterectomy.  No other evidence was provided to indicate that the perforation
occurred during the sponge retrieval.  Without any evidence of when the
perforation occurred, Bullock’s testimony fails to provide any evidence of a
breach of the standard of care relating to the bowel perforation.

            Reviewing
the evidence, as a whole, there is no evidence to support Ortegon’s contention that
Benavides negligently cut her bowel during the sponge retrieval.  The burden of
proof was on Ortegon to present evidence raising a fact issue that, to a degree
of reasonable medical probability, the acts or omissions of Benavides were a
breach of the standard of care which proximately caused the injuries and
damages alleged by Ortegon.  Ortiz v. Santa Rosa Med. Ctr., 702 S.W.2d
701, 703 (Tex. App.―San Antonio 1985, writ ref’d n.r.e.) (holding that
when a trial court directs a verdict against the party bearing the burden of
proof, that party must show on appeal that it presented evidence on each
element of its claim).  Ortegon failed to meet this standard and the
trial court, therefore, correctly granted the instructed verdict in favor of
Benavides.

2.                 
Mercy Hospital Sponge Count

 

            Mercy Hospital asserts that there was no probative evidence that any employee or agent of Mercy Hospital caused any injury to Ortegon.  In order to find Mercy Hospital negligent,
Ortegon had to prove the surgical nurse responsible for the sponge count was
negligent and that this incorrect count caused the reopening of the sutures and
the resulting perforation of the bowel.  The testimony, however, establishes
that the nurse correctly informed Benavides that the sponge count was
incomplete.  An x-ray was taken and the sponge was detected in Ortegon’s pelvic
region.  Benavides then cut the sutures and retrieved the sponge in question.  

            Ortegon’s
negligence claim is based on the hospital’s policy that sponges must be counted
at the beginning of surgery, before closing any deep or large cavity, and at
the end of surgery.  Ortegon asserts this is the standard of care breached by
Benavides and Mercy Hospital.  Without question, the sponge count was not
completed before closure.  Benavides testified that it was the nurse’s
attention to the sponge detail, albeit following closure, which alerted him to
the possibility of a missing surgical sponge.  Although Ortegon relies on the
hospital’s policy that sponges must be counted at the end of surgery as a
standard of care, there was no testimony that the nurse breached any standard
of care recognized by the medical community by finishing the sponge count after
closure.  Thus, the record lacks any evidence of any breach of the standard of
care by the nurse.

In
addition, there is no evidence that the sponge count, even if taken after
closure, caused the complications claimed by Ortegon.  Bullock asserts that if
the bowel was cut during the sponge retrieval, caused in part by the lack of a
sponge count before closure, then Mercy Hospital is liable for the resulting
damages.  As previously noted, the record lacks any evidence that the bowel was
cut upon re-entry to remove the sponge.  Thus, the lack of evidence that the
bowel was cut during the sponge retrieval is fatal to the claim of negligence
against Mercy Hospital related to the sponge count.  Given the lack of evidence,
the trial court’s grant of a directed verdict was proper on this claim.

3.         Disclosure
and Treatment of Ortegon’s Cut Bowel

Ortegon
complains that the directed verdict was improper because there was some
evidence that Benavides was negligent in diagnosing and treating the perforated
bowel.  However, no expert testimony supported this claim.  Even Bullock’s
testimony supported Benavides’s actions in consulting experts shortly after
Ortegon started developing problems.  Bullock could not say, with reasonable
medical probability, that Ortegon failed to properly administer antibiotics or
that he did not contact the proper consultants when Ortegon suffered
post-operative complications.  Bullock does not testify that Benavides breached
a standard of care in the diagnosis or treatment of the perforated bowel.  As
such, the trial court properly granted a directed verdict on this claim in
favor of Benavides.  

C.        Non-Negligence
Claims

Ortegon
argues that the trial court erred by refusing to submit her proposed jury
question concerning Benavides’s failure to disclose that he left a surgical
sponge in her pelvic area.  Additionally, she alleges that Benavides and Mercy Hospital acted fraudulently in their attempts to hide the truth from her and to keep
her at the hospital and that the trial court erroneously granted a directed
verdict on these claims.  

1.   Partial
Record on Appeal

            When
an appellant fails to follow the appellate procedures relating to a partial
reporter’s record, the presumption arises that the omitted portions of the
record support the trial court’s judgment.  Christiansen, 782 S.W.2d at
843.  Here, because the appellate record does not contain a complete record of
the trial proceedings, we must presume the omitted proceedings support the
trial court’s judgment.  Bennett, 96 S.W.3d at 229.  More specifically,
we presume that the omitted evidence, including Ortegon’s testimony, supports
the trial court’s grant of the directed verdict.  DeSantis v. Wackenhut
Corp., 793 S.W.2d 670, 689 (Tex. 1990).  Applying this presumption defeats Ortegon’s
claims of fraud and lack of disclosure as shown below.

 

2.     
Fraud

            Ortegon’s
fraud claim appears to be that Benavides and Mercy Hospital failed to disclose
the truth about her March 5th surgery in order to keep her at Mercy Hospital.  To establish her fraud claim, Ortegon was required to show: 

(1)     a material representation was made; 

(2)     the representation was false; 

(3)     when the representation was made, the speaker knew it was
false or made it without any knowledge of the truth and as a positive
assertion; 

(4)     the representation was made with the intention that it be
acted upon by the other party; 

(5)     the party acted in reliance upon the representation; and 

(6)     the party suffered injury.  

 

Johnson &
Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998);
Trevino v. Christus Santa Rosa Healthcare Corp., No. 04-01-00764-CV,
2002 WL 31423711, *3 (Tex. App.─San Antonio Oct. 30, 2002, no pet.).  Because
the record does not include Ortegon’s testimony, there is no evidence of what
information Ortegon did, or did not, receive from either Benavides or Mercy Hospital.  Without evidence of some misrepresentation, Ortegon fails to prove the
first element of fraud.  Johnson & Higgins, 962 S.W.2d at 524. 
Additionally, without the reporter’s record regarding the alleged
misrepresentation to Ortegon and communication regarding the same, proof of the
remaining elements also fails.  Moreover, even assuming material
representations were made, Ortegon failed to provide any evidence that, when
the representations were made, Benavides knew the representations were false.  Because
we are bound by the presumption that the record is complete, and that any
material missing from the record supports the trial court’s judgment, we cannot
say the trial court erred in granting the directed verdict with regard to the
fraud claim.  We, therefore, overrule this issue on appeal.

 

 

3.     
Failure to Disclose

            Ortegon
claims the trial court erred in granting the directed verdict regarding
Benavides’s and Mercy Hospital’s failure to disclose the need to retrieve the
surgical sponge after Ortegon’s incision was closed.  During cross-examination,
Dr. Gerald Bullock (“Bullock”), Ortegon’s expert, testified that the nurse did
not have an obligation to disclose; but that in the event that Benavides was
reluctant or refused to tell Ortegon of any medical mistakes, then Mercy Hospital did have a duty to disclose the mistake, i.e. the retained sponge.  Yet,
Bullock could not identify any support in the record that Benavides failed to
disclose or refused to discuss the surgical procedure with Ortegon.  Bullock
also acknowledged that there is no evidence Mercy Hospital was ever made aware
of Benavides’s failure to discuss the sponge retrieval with Ortegon.  Absent
Ortegon’s testimony, the record is silent with regard to what information was
actually disclosed to Ortegon regarding a retained sponge and that any such
alleged failure to disclose caused any damages to Ortegon.  More importantly,
because we are presented with a partial record, we must presume the evidence
supported the trial court’s determination in favor of Benavides and we overrule
this appellate issue.

Improper
Argument of Counsel

            In her next issue, Ortegon argues that the trial court
reversibly erred when defense counsel stated, in front of the jury, that Ortegon’s
expert witness should be advised of his rights, thus irreparably prejudicing Ortegon’s
rights to a fair trial free of taint.

            During
the presentation of the evidence, Benavides’s counsel stated “if [Bullock] does
intend to change [his sworn testimony], I think he should be advised of his
rights.”  These statements are analogous to statements amounting to improper
jury argument.  Importantly, however, no objection was lodged at the time of
the alleged error and Ortegon’s counsel did not request the jury be instructed
to disregard the comments.  Although an objection is not required in order to
preserve error if the error is deemed to be incurable, Otis Elevator Co. v.
Wood, 436 S.W.2d 324, 333 (Tex. 1968), Ortegon not only failed to object at
trial, but she did not raise the alleged prejudicial remarks in her motion for
new trial.  A motion for new trial is necessary to preserve a complaint of
incurable jury argument, if not otherwise ruled on by the trial court.  Tex. R. Civ. P. 324(b).  Failure to
raise the issue at trial, or on the motion for new trial, waives appellate
review.  Tex. R. App. P.
33.1(d).  We, therefore, overrule this issue on appeal.

Motion for
New Trial - Benavides’s Alleged Twitches

            In her final appellate issue, Ortegon asserts the trial
court erred in failing to grant her motion for new trial based on newly
discovered evidence.  The alleged newly discovered evidence involved Benavides’s
so-called twitches.  

A.               
Standard of Review

An
appellate court reviews a trial court’s ruling on a motion for new trial based
on newly discovered evidence for an abuse of discretion.  In re R.R.,
209 S.W.3d 112, 114 (Tex. 2006); Stafford v. Southern Vanity Magazine, Inc.,
231 S.W.3d 530, 538 (Tex. App.—Dallas 2007, pet. denied).  The trial court’s
decision will not be disturbed absent a “manifest abuse of discretion.”  Stafford, 231 S.W.3d at 538.  A trial court abuses its discretion when it acts in an
arbitrary and unreasonable manner or without reference to any guiding
principles.  Id.  

            When
a trial court refuses to grant or deny a motion for new trial based on newly
discovered evidence, every reasonable presumption will be made in favor of the
trial court’s decision.  Patriacca v. Frost, 98 S.W.3d 303, 307 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  A party seeking a new trial on the
ground of newly discovered evidence must satisfy the court that: (1) the
evidence came to his knowledge since the trial; (2) it was not owing to want of
due diligence that the evidence had not come to his attention sooner; (3) the
evidence is not cumulative; and (4) the evidence is so material that it would
probably produce a different result if a new trial were granted.  Stafford, 231 S.W.3d at 538.

B.                
Analysis

Ortegon’s
motion for new trial, based on newly discovered evidence, fails on several
grounds.  First, Ortegon’s counsel questioned Benavides about any potential
impairment during the trial and the alleged twitching was addressed at trial. 
The motion for new trial alleged new evidence of perjury by
Benavides − unrelated to the “twitching.”  Although the alleged twitching
is mentioned briefly in the motion for new trial, it is not a point upon which
Ortegon requested the court to rule.

            Second,
a motion to obtain a new trial based on newly discovered evidence must include some
evidence supporting each element for the granting of the new trial.  See Hensley
v. Salinas, 583 S.W.2d 617, 618 (Tex. 1979).  Ortegon failed to provide any
evidence specifically with regard to the due diligence element.  

            Third,
when the only purpose of the new evidence is to impeach a witness, a new trial is
generally not warranted.  Eckert v. Smith, 589 S.W.2d 533, 538 (Tex.
App.─Amarillo 1979, writ ref’d n.r.e.).  Ortegon sought to introduce Benavides’s
twitching to make it more likely that he perforated the bowel during surgery. 
However, because the evidence does not establish when, or even if, Ortegon’s
bowel was punctured, the only purpose of such testimony is to impeach Benavides’s
qualifications as a competent surgeon and is thus improper.

            Fourth,
whether Benavides has a “twitch” is not evidence so material that it would
probably produce a different result in a new trial.  The jury heard the
testimony of Benavides and could see his twitches, if any, present in the
courtroom.  The new evidence must bring to light new and independent truth so
decisive it demonstrates justice was not obtained.  New Amsterdam Cas.
Co. v. Jordan, 359 S.W.2d 864, 867-68 (Tex. 1962).  There is no evidence
that Benavides’s alleged twitches had any effect on the March 5th surgery. 
Therefore, any alleged twitch cannot be said to be so material that it would
produce a different result.  Accordingly, the trial court did not err in
failing to grant the requested motion for new trial and we overrule this issue
on appeal.

Cross Appellant’s Argument for Sanctions

Benavides
asserts the trial court abused its discretion by denying (1) his pretrial Motion
for Sanctions and Dismissal Pursuant to Section 13.01 of the former Texas
Medical Liability and Insurance Improvement Act because Ortegon’s expert report
failed to contain an adequate statement of causation and (2) the allegations of
Benavides’s medical problems and the request for a medical and physical
evaluation of Benavides were groundless and brought in bad faith and for
purposes of harassment.

A.        Standard
of Review

“The
decision to impose a sanction is left to the discretion of a trial court and
will be set aside only upon a showing of a clear abuse of discretion.”  Phillips
& Akers, P.C. v. Cornwell, 927 S.W.2d 276, 279 (Tex. App.―Houston
[1st Dist.] 1996, no writ).  The test for abuse of discretion is not whether,
in the opinion of the appellate court, the facts present an appropriate case
for the trial court’s actions.  Rather, it is a question of whether the court
acted without reference to any guiding rules and principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  

B.        Pretrial Motion for Sanctions

            There
were two different pretrial motions for sanctions, a motion to dismiss pursuant
to Section 74.351 and a motion for sanctions filed approximately two months
later in accordance with Texas Rule of Civil Procedure 13 asserting that
Ortegon’s allegations were frivolous.[3] 
Ortegon asserts that although Benavides filed the motions, they were never set
or heard before the trial court.  The appellate record supports Ortegon’s
position only with regard to the lack of an order being entered with the
court.  The trial court’s docket sheet indicates that there was an order
setting these motions for a hearing, and the pleadings of the parties suggest
that the hearing was in fact held.  We do not, however, have either an order or
a transcript of these proceedings.[4] 
In order to preserve error, the record must show that: (1) the complaint was
made to the trial court by a timely request, objection, or motion, and (2) the
trial court either expressly or implicitly ruled on the objection or refused to
rule with the complaining party objecting to the refusal.  Tex. R. App. P. 33.1(a); Martin v.
Commercial Metals Co., 138 S.W.3d 619, 623 (Tex. App.―Dallas
2004, no pet.).  If no written order overruling the objection is available, the
record must reflect that the trial court ruled on the party’s objections,
either explicitly or implicitly.  Tex.
R. App. P. 33.1(a)(2).  Therefore, in accordance with Rule 33.1, Benavides
failed to preserve error on this issue.

C.               
Benavides’s Motion for Sanctions on Ortegon’s Discovery Requests
of a Mental and Physical Examination of Benavides

 

            On
August 15, 2005, after trial had commenced and four months after taking Benavides’s
deposition, Ortegon filed a motion entitled “Plaintiff’s Request to Inquire
Into Medical Problems” regarding Benavides’s health.[5]  Additionally, two weeks after trial,
Ortegon requested depositions of Benavides and others purported to inquire into
Benavides’s medical status and sought a mental and physical examination of
Benavides.  Benavides filed a motion for sanctions alleging the motions,
discovery and pleadings were filed for improper purposes.  During the hearing
on the motion for sanctions, the trial court heard testimony, and reviewed the
evidence.  A review of the record does not, however, include a ruling by the
trial court or a signed order.  Therefore, for the same reasons stated above,
Benavides has failed to preserve error with regard to the trial court’s failure
to award sanctions.  Tex. R. App. P.
33.1.

Conclusion

            Ortegon’s request to file a statement of appellate points
and supplemental reporter’s record after the parties’ initial briefing is too
late.  Substantial prejudice would result to Benavides if additional evidence
were considered after the completion of briefing in this case.  We, therefore,
deny appellant’s motion to late designate points or issues and refuse to
consider the supplemental reporter’s record submitted after the case was “at
issue.” 

            With
the exception of the res ipsa loquitor claim, Ortegon failed to prove Benavides’s
medical malpractice, by expert testimony.  Accordingly, the trial court
properly granted the directed verdict on the medical malpractice causes of
action.

            Ortegon
failed to preserve error with regard to any alleged improper argument by
counsel.  By failing to direct the trial court’s attention to the same, Ortegon
waived any resulting error.  Moreover, because Ortegon’s motion for new trial was
not based on newly discovered evidence of any alleged twitches of Benavides,
was not verified, was solely intended to impeach Benavides and was not so
material that it would probably produce a different result, the trial court
properly denied the motion for new trial.

            Finally,
the record is barren of any order regarding Benavides’s motions for sanctions. 
Accordingly, Benavides failed to preserve error and we overrule these issues on
appeal.

 

 

Rebecca Simmons, Justice








 

 









[1] 
We exclude from discussion the res ipsa loquitor claim that was tried
before the jury.





[2]  
Because of the untimely supplementation of the reporter’s record after
submission, we do not consider the supplemented record.





[3] Benavides cites to Article 4590i,
Section 13.01 in his motion to dismiss.  However, Article 4590i was repealed in
2003 and recodified at Texas Civil Practice and Remedies Code Section 74.351. 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, §10.09, 2003 Tex. Gen. Laws 847,
884 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon Supp. 2007)).  Because the underlying suit was filed after
September 1, 2003, we interpret Benavides references to 4590i as references to
Section 74.351.  

 





[4]  
Benavides concedes there is no reporter’s record based on the reporter’s
assertions that “the transcript of such hearing could not be reproduced because
the original recording could not be found.”





[5] 
The motion requested Ortegon be allowed to “cross examine Dr. Benavides
regarding medical problems to determine the cause of his ticking and
twitching.”  The motion also alleged that “Plaintiff’s counsel has been
informed by Mr. Ortegon that Dr. Benavides may have Parkinson’s disease or
similar ailment.”