599 So.2d 1356 (1992)
BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND, Appellant,
v.
FLORIDA PUBLIC UTILITIES COMPANY, Appellee.
No. 90-03833.
District Court of Appeal of Florida, First District.
May 18, 1992.
Rehearing Denied June 23, 1992.
Lynn M. Finnegan, Florida State University, College of Law, and Eugene E. McClellan, Jr., Deputy General Counsel, Dept. of Natural Resources, Tallahassee, for appellant.
*1357 George P. Ord of Alley, Maass, Rogers & Lindsay, P.A., Palm Beach, for appellee.
BOOTH, Judge.
This cause is before us on appeal from summary final judgment entered in a suit to quiet title in favor of plaintiff/appellee. The trial court ruled that appellee's record title to four parcels of land in Jackson County included ownership of a water body, rejecting the State's claim of ownership of any lands located waterward of the ordinary high-water line of the water body in question. On appeal, the issue is whether the trial court correctly ruled that there was no justiciable issue of fact as to navigability and, therefore, title to the water body.[1]
The complaint alleged that in 1825, the subject land was surveyed under the auspices of the Surveyor General of the United States. The Surveyor General's instructions required the surveyors to indicate by use of a meander line[2] the navigable water bodies. The water body located on the land, referred to in the complaint as "Spring Creek,"[3] was not meandered in connection with that original survey. Appellant admitted these allegations but responded that "[t]he fact that a water body was not meandered in the original government survey does not mean that the water body was not navigable-in-fact or susceptible of navigation." Appellant also filed an affirmative defense stating that the water body was navigable on the date Florida was admitted to statehood and a counterclaim seeking to quiet title to any lands located waterward of the water body's ordinary high-water line.
Appellee filed its motion for summary judgment, stating that appellant's admission that the water body was not meandered in the federal survey "raises a presumption of non-navigability which defendant cannot rebut." The trial court granted the motion for summary judgment in an order stating that appellant had "failed to present any evidence whatsoever as to the navigability of the water body."
On appeal to this court,[4] the parties, in their briefs and in oral argument, have addressed the issue of whether a presumption of non-navigability arises where a water body is not "meandered" and, if so, whether it is sufficient to support entry of a summary judgment in the absence of other evidence of navigability. The court in Odom v. Deltona Corporation, 341 So.2d 977, 989 (Fla. 1976), held, and appellee concedes, that such a presumption is rebuttable and not conclusive, as suggested in appellee's motion below. Appellee, nevertheless, contends that appellant failed to present any evidence to the contrary, entitling it to summary judgment.
Florida's test for navigability is similar, if not identical, to the federal title test. Odom, supra at 988, citing Baker v. State, 87 So.2d 497, 498 (Fla. 1956). The Baker court quoted this test as set forth in State of Oklahoma v. State of Texas, 258 U.S. 574, *1358 42 S.Ct. 406, 411, 66 L.Ed. 771, 776 (1922), as
whether [a water body] is used, or susceptible of being used, in its natural and ordinary condition as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.
Earlier Florida cases adopted similar tests for navigability, such as whether "waters as by reason of their size, depth, and other conditions are in fact capable of navigation for useful public purposes." Clement v. Watson, 63 Fla. 109, 58 So. 25, 26 (1912), and whether
a stream or body of water is permanent in character, and in its ordinary natural state is in fact navigable for useful purposes, and is of sufficient size and so situated and conditioned that it may be used for purposes common to the public in the locality where it is located... . Capacity for navigation, not usage for that purpose, determines the navigable character of waters... .
Broward v. Mabry, 58 Fla. 398, 50 So. 826, 830 (1909). Our Supreme Court in Martin v. Bush, 93 Fla. 535, 112 So. 274, 283 (1927), held navigable waters to include
lakes, rivers, bays, or harbors, and all waters capable of practical navigation for useful purposes, whether affected by tides or not, and whether the water is navigable or not in all its parts toward the outside lines or elsewhere, or whether the waters are navigable during the entire year or not.
The determination of whether a water body is navigable requires the application of existing law to the particular facts of each case. Lopez v. Smith, 145 So.2d 509, 513 (Fla. 2d DCA 1962), citing Broward, supra, 50 So. at 830. Facts relevant to the determination of navigability will include the physical characteristics of the water body, such as size and depth, and other conditions that would make the water body useful for public purposes. Lopez at 513. The manner and extent of public or private commercial or recreational usage are also relevant to the determination of navigability. Baker, supra at 498 (although water body was meandered in the original survey, the evidence as a whole that it was difficult to cross with a flatbottomed row boat refuted the claim of navigability); McDowell v. Trustees of Internal Improvement Fund, 90 So.2d 715, 716 (Fla. 1956) (determination of navigability was based at least in part upon evidence that the lake was useful for fishing); Bucki v. Cone, 25 Fla. 1, 6 So. 160, 162 (1889) (determination of navigability was based in part upon evidence that river was useful for the floatage of logs); Lopez, supra at 514 (evidence of pleasure boating recognized as sufficient under the federal test to establish susceptibility to similar types of commercial use).
Appellee's burden as the party moving for summary judgment is as set forth in the landmark case of Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966), as follows:
[I]t must first be determined that the movant has successfully met his burden of proving a negative, i.e., the non-existence of a genuine issue of material fact... . He must prove this negative conclusively. The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party.
This burden was greater than the burden that appellee would have had to carry at trial because, as movant for summary judgment, appellee was required to prove a negative and demonstrate not simply that the facts supported its own theory of the case, but also that the facts showed that appellant, as the party moved against, could not prevail. Florida East Coast Railway Company v. Metropolitan Dade City, 438 So.2d 978, 980 (Fla. 3d DCA 1983).
We must agree with appellant that there are material issues of fact as to ownership which preclude summary judgment. The record has no description of the water body in question and contains no plats, maps, or photographs. However, the documents relating to appellee's chain of title do give rise to inferences of navigability. For example, appellee's Exhibit A, "Legal Description for Blue Springs," shows that, in the early part of this century, Spring *1359 Creek or Blue Springs was of sufficient magnitude or had sufficient flowage to power a mill on another parcel owned by appellee's predecessor in title, Southern States Power Company. Further, there was a dam across the water body. These documents also indicate that in 1986, appellee leased Blue Springs to Jackson County as a recreational center for swimming, bathing, and other amusement, with the proviso that no skin diving would be allowed without appellee's approval, and that appellee reserved the right to control, direct, or increase the flow of the spring. Appellee's interest in controlling the spring flow presumably was due to its ownership of the water power plant, which the documents state was commonly known as Merritt's Mill or Blue Springs Power Company's Mill. The foregoing information, gleaned from the sketchy record before us, indicates that material issues of fact exist.
Any presumption raised by there being no meander line in the 1825 federal survey is inconclusive on the question of navigability here. We hold, therefore, that lack of a meander line in the early federal survey does not entitle appellee to summary judgment and that the matters referenced in the title documents permitted the inference of navigability.[5]
The judgment below is reversed, and this cause is remanded for further proceedings.
WIGGINTON and BARFIELD, JJ., concur.
NOTES
[1] Title to land beneath navigable waters is vested in the sovereign ownership of the State. Article X, § 11, Fla. Const. The determination of navigability is to be made as of 1845, the date Florida became a state. Odom v. Deltona Corporation, 341 So.2d 977, 988 (Fla. 1976).
[2] A meander line is a series of continuous straight line segments drawn to depict the sinuosities of the shorelines of navigable water bodies. C. White, A History of the Rectangular Survey System (1983); for discussion of meander lines, Walter G. Robillard and Lane J. Bouman, Clark, Surveying and Boundaries §§ 13.01-13.18 (5th ed. 1987); David Guest, The Ordinary High Water Boundary on Freshwater Lakes and Streams: Origin, Theory, and Constitutional Restrictions, 6 Florida State University Journal of Land Use and Environmental Law 205, 218 n. 70 (1991).
[3] The exhibits to the complaint and the briefs filed in this court refer to the water body as "Blue Springs." Neither party has explained this discrepancy, but we are apparently to assume that both names have applied to this water body at different times. The trial court, and perhaps counsel as well, may have personal knowledge as to names given the water body, but this knowledge is not present of record and cannot in any way serve as part of the basis for summary judgment.
[4] This court dismissed the original appeal as being from a nonfinal order relating to one count of a three-count complaint. On remand, appellee dropped the other two counts, and the present appeal was filed.
[5] Appellant's brief has an appendix consisting of an 1831 resolution of the Legislative Council of the Territory of Florida, purporting to affect the navigability of a "Spring Creek" in Jackson County, and the brief refers to the 1853 act repealing this territorial proclamation and language therein. The trial judge was not given the benefit of this information, and indeed, we are not asked to take judicial notice of these enactments. These references are improperly included in appellant's brief, and are stricken. Our decision is based entirely on the record presented below.