TAYLOR, J.
 

 In this action for personal injuries resulting from a boat accident, plaintiff, Bruce Briggs, the personal representative of the estate of Neila Briggs, appeals the trial court’s order granting summary judgment for the defendants, Jupiter Hills Lighthouse Marina (“Jupiter Hills”), Jeffrey Briggs, and Harris-Kayot. The trial court determined that the accident occurred on navigable waters and that plaintiffs tort claims are barred by expiration of the three-year statute of limitations for maritime torts. We affirm summary judgment as to all counts except the state statutory cause of action against Jupiter Hills.
 

 On March 4, 2001, Jeffrey Briggs rented a boat from Jupiter Hills Lighthouse Marina after consuming alcohol. His mother and father, Neila and Bruce Briggs, were passengers on the boat. Two to three hours into their trip on the Loxahatchee River, Jeff hit the wake from a larger boat. Neila flew from her seat up into the air and landed on the floor of the boat. She broke her back and was placed in a body cast for about eight months following the accident. On March 2, 2005, almost four years after the accident, Neila Briggs filed a lawsuit seeking damages for her personal injuries. She sued three parties: (1) the operator of the vessel at the time of the accident, Jeff Briggs; (2) the company that rented the vessel, Jupiter Hills Lighthouse Marina; and (3) the manufacturer of
 
 *31
 
 the vessel, Harris-Kayot.
 
 [1]
 

 Plaintiff amended her complaint and added allegations that Jupiter Hills negligently entrusted the boat to Jeff Briggs, violated sections 327.50 and 327.54, Florida Statutes, and breached the rental agreement between Jupiter Hills and Jeff Briggs. Plaintiff also added a breach of contract claim against Jeff Briggs. The defendants’ initial motions for summary judgment were denied. After discovery was completed, the defendants re-filed motions for summary judgment. They asserted that plaintiffs claims were barred by the three-year statute of limitations for torts under maritime law. In support of their positions, the parties submitted the depositions and affidavits of key participants and various experts. After considering the materials, memoranda, and argument of counsel, the trial court granted summary judgment in favor of the defendants. The court found that “the incident occurred in navigable waters and that the parties were engaged in activity which bears a substantial relationship to traditional maritime activity.” It determined that the “three-year statute of limitations for maritime torts (46 U.S.C. § 763a) applies to the claims in this case,” and that, because the action was not filed until almost four year’s after the incident, the plaintiffs action was time-barred.
 

 The standard of review for the trial court’s granting of a summary judgment motion is
 
 de novo. Major League Baseball v. Morsaui,
 
 790 So.2d 1071, 1074 (Fla.2001);
 
 Patten v. Winderman,
 
 965 So.2d 1222, 1224 (Fla. 4th DCA 2007). When an appellate court reviews a ruling on a summary judgment motion, it “must examine the record and any supporting affidavits in the light most favorable to the non-moving party.”
 
 City of Lauderhill v. Rhames,
 
 864 So.2d 432, 434 n. 1 (Fla. 4th DCA 2003).
 

 The party who moves for summary judgment “has the burden of proving the absence of a genuine issue of material fact.”
 
 Patten,
 
 965 So.2d at 1224 (citing
 
 Holl v. Talcott,
 
 191 So.2d 40, 43 (Fla.1966)). Moreover, evidence that raises an issue of material fact, conflicts, permits different reasonable inferences, or tends to prove issues should be submitted to the jury.
 
 Id.
 
 In other words, “[a] motion for summary judgment should not be granted if the record reflects the existence of genuine issues of fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist.”
 
 Walter T. Embry, Inc. v. LaSalle Nat’l Bank,
 
 792 So.2d 567, 568 (Fla. 4th DCA 2001). After the movant has provided competent evidence to establish his or her claim, the non-moving party must provide counter-evidence which shows a genuine issue.
 
 Id.
 

 Plaintiffs first argument on appeal is that there were genuine issues of material fact in dispute concerning the location of the accident. As defendant Jeff Briggs acknowledges, he and Neila Briggs gave conflicting testimony about where the accident actually occurred. However, in ruling on the motion for summary judgment, the trial court expressly stated that “[f]or purposes of the motions, the court assumed that the incident occurred at the location identified by the plaintiff.” Moreover, the record establishes that both locations identified by the parties are located well within the navigable waters of the Loxahatchee River, which provides vessels up to forty feet in length with access to the Intracoastal Waterway and the Atlantic
 
 *32
 
 Ocean. Thus, no issue of material fact existed regarding the accident site so as to preclude summary judgment.
 

 Plaintiff next argues that there was a dispute among the experts regarding the navigability of the accident site for purposes of admiralty jurisdiction. The record, however, reveals that there were no conflicts in the “facts” relating to the physical and navigability attributes of the Loxahatchee, just a conflict in the ultimate legal conclusions reached by the experts. Although the issue of navigability requires resolving some factual questions based on the particular circumstances of each case, the ultimate conclusion as to navigability is a question of law inseparable from the particular facts to which they are applied.
 
 Loving v. Alexander,
 
 745 F.2d 861, 865 (4th Cir.1984);
 
 see also Brevard County v. Blasky,
 
 875 So.2d 6, 13 (Fla. 5th DCA 2004);
 
 Bd. of Trs. of Internal Imp. Trust Fund v. Fla. Pub. Utils. Co.,
 
 599 So.2d 1356, 1358 (Fla. 1st DCA 1992). The trial court properly disregarded those portions of the expert witnesses’ affidavits which were merely legal conclusions. A trial judge may not rely on expert testimony “to determine the meaning of terms which were questions of law to be decided by the trial court.”
 
 Devin v. City of Hollywood,
 
 351 So.2d 1022, 1026 (Fla. 4th DCA 1976);
 
 see also Palm Beach County v. Town of Palm Beach,
 
 426 So.2d 1063, 1070 (Fla. 4th DCA 1983) (expert witnesses are not supposed to draw legal conclusions; this is the function of trial courts).
 

 Among the factors relied upon by plaintiffs expert to support his claim of the Loxahatchee’s non-navigability were the presence of sandbars and shallow areas in the vicinity of the accident and the Tequesta Drive Bridge, a fixed bridge. These factors, however, do not negate the status of the Loxahatchee River as a navigable waterway. Plaintiff failed to produce any evidence that the bridge created an obstruction to interstate commerce and travel. Moreover, the undisputed evidence shows that the subject vessel was able to travel under the bridge and that there were other vessels traveling in the area as well. The sandbar areas were marked by navigational aids and were not a contributing cause of the accident.
 
 See, e.g. United States v. Utah,
 
 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931) (holding that the mere presence of sandbars impeding navigation does not make a river unnavigable). The accident was caused when the subject vessel hit the wake of a passing vessel, which was thirty to thirty-eight feet in length.
 

 Plaintiff argues that his personal injury suit does not involve a maritime tort subject to the three-year-statute of limitations. Under maritime or admiralty law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within three years after the cause of action arose. 46 U.S.CApp. 763a (2001).
 
 [2]
 
 A personal injury tort claim is governed by maritime law when it (1) arises on navigable waters (the locus test) and (2) bears a substantial relationship to a traditional maritime activity (the nexus test).
 
 Executive Jet Aviation, Inc. v. City of Cleveland,
 
 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972);
 
 Foremost Ins. Co. v. Richardson,
 
 457 U.S. 668, 676, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).
 
 [3]
 
 Here,
 
 *33
 
 it is clear that the operation of the vessel involved in the subject accident bears a significant relationship to a traditional maritime activity. Thus, the controlling issue to be decided is whether the alleged tort occurred on “navigable waters.”
 

 In
 
 The Daniel Ball,
 
 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870),
 
 superseded by statute,
 
 Federal Water Pollution Control Act Amendments of 1972, § 404(G)(1), 33 U.S.C.A. § 1444(g)(1),
 
 as recognized in Rápanos v. United States,
 
 547 U.S. 715, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006), the Supreme Court enunciated the test for determining whether a specific body of water constitutes navigable waters for purposes of federal admiralty jurisdiction:
 

 Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.
 

 Id.
 
 at 563. Although
 
 The Daniel Ball
 
 was essentially a Commerce Clause case, it has been applied by many courts in deciding admiralty jurisdiction and is considered to be the ground breaking decision in this area of law.
 
 LeBlanc v. Cleveland,
 
 198 F.3d 353, 356 (2d Cir.1999).
 

 The test of navigability is whether a waterway “is presently used, or is presently capable of being used, as an interstate highway for commercial trade or travel in the customary modes of travel on water.”
 
 LeBlanc,
 
 198 F.3d at 359. In this case, no evidence was presented regarding commercial maritime activity on the Loxa-hatchee River where the accident occurred. However, “the test for navigability is based on a broader and more stable factor than whether the body of water is currently being used for commercial navigation. It must also include a consideration of whether the body of water is
 
 capable
 
 of bearing commercial navigation.”
 
 Price v. Price,
 
 929 F.2d 131, 134 (4th Cir.1991);
 
 Mullenix v. United States,
 
 984 F.2d 101, 104 (4th Cir.1993) (a purely recreational waterway can be deemed navigable for purposes of federal admiralty jurisdiction). We can find no support for plaintiffs position that a waterway is navigable for purposes of admiralty jurisdiction only if the waterway can support “ocean going commercial vessels.”
 

 Unlike the cases cited by plaintiff, which involved waterways with dams, waterfalls, or other impediments that made it physically impossible for commercial shipping to ever take place,
 
 [4]
 
 no evidence was
 
 *34
 
 presented in this case that there are any natural or artificial obstructions on the Loxahatchee which would effectively prohibit future commerce.
 
 See LeBlanc,
 
 198 F.3d at 359 (stating that if “natural and artificial obstructions” effectively prohibit commerce, admiralty jurisdiction cannot lie). In fact, Bruce, Neila, and Jeff Briggs all stated in their depositions that relatively large boats were on the Loxahatchee on the day of the accident and that a boat approximately thirty feet long created the wake which caused the accident. The undisputed evidence established that the Loxahatchee River flows and/or unites with the Intracoastal Waterway and the Atlantic Ocean, thus permitting vessel traffic between the accident site and the Atlantic Ocean, which can continue on to foreign states and countries.
 

 In sum, there are no disputed facts regarding the navigability issue and the trial court properly determined that the area of the Loxahatchee where the accident occurred was a navigable waterway for maritime purposes. Thus the trial court properly applied the three-year statute of limitations for admiralty jurisdiction in granting summary judgment for the defendants.
 

 We find no merit to plaintiffs argument that the maritime three-year statute of limitations does not apply to the negligent entrustment and breach of contract causes of action. We do agree with plaintiff, however, that his state statutory cause of action against Jupiter Hills should not have been barred by the three-year statute of limitations. In Count One of the amended complaint, plaintiff alleged that Jupiter Hills violated section 327.54, Florida Statutes (2001). Section 327.54(1) states that a “livery may not knowingly lease, hire, or rent a vessel to any person” under certain conditions. A cause of action under section 327.54 is considered independent from a negligence cause of action.
 
 See Meyers v. Scoot-a-Way Corp.,
 
 662 So.2d 411 (Fla. 3d DCA 1995);
 
 see also Ruano v. Water Sports of Am., Inc.,
 
 578 So.2d 385, 386 (Fla. 3d DCA 1991) (holding that the statute “supplants the common law theories of vicarious liability and negligent entrustment”). The plaintiffs cause of action under the statute does not fall within the ambit of admiralty jurisdiction because the statute clearly provides for a state-created cause of action that is independent from other common law torts. Accordingly, we affirm final summary judgment on all counts for the defendants, except the state statutory cause of action against Jupiter Hills.
 

 Affirmed in part; Reversed in part.
 

 HAZOURI and MAY, JJ., concur.
 

 [1]
 

 . During the pendency of this appeal, Neila Briggs passed away from causes unrelated to this lawsuit.
 

 [2]
 

 . This statute has been renumbered as 46 U.S.C.A. § 30106 (2006).
 

 [3]
 

 . The Supreme Court has explained that the nexus test does not require that the maritime activity be an exclusively commercial activity; the negligent operation of a boat on navigable waters is enough.
 
 Foremost, 457
 
 U.S. at 674, 102 S.Ct. 2654. In fact, the Supreme Court has held,
 

 The potential disruptive impact of a collision between boats on navigable waters,
 
 *33
 
 when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce.
 

 Id.
 
 at 675, 102 S.Ct. 2654;
 
 see also Wilson v. Suzuki of Orange Park, Inc.,
 
 2005 WL 3372839 (M.D.Fla.2005) (holding that admiralty jurisdiction applied to the case of a malfunctioning Sea Doo).
 

 [4]
 

 .
 
 Lockheed Martin Corp. v. Morganti,
 
 412 F.3d 407 (2d Cir.2005);
 
 Livingston v. United States,
 
 627 F.2d 165 (8th Cir.1980);
 
 Chapman v. United States,
 
 575 F.2d 147 (7th Cir.1978);
 
 Adams v. Mont. Power Co.,
 
 528 F.2d 437 (9th Cir.1975);
 
 Dunham v. DeMaine,
 
 559 F.Supp.
 
 *34
 
 224 (E.D.Ark.1983);
 
 Smith v. Hustler, Inc.,
 
 514 F.Supp. 1265 (W.D.La.1981).