May, C.J.
After a long and tortured litigation history, the plaintiff appeals a final summary judgment in an action seeking to enforce a noncompete provision. It argues, among other issues, that the trial court erred in entering summary judgment as genuine issues of material fact remain. We agree and reverse.
The plaintiff filed an action against one of its former employees and a competing company, seeking to enforce a noncompete provision and damages. The facts giving rise to the claims are these.
The plaintiff provided emergency department staffing at Wellington Regional Medical Center. The plaintiffs former employee (“doctor”) is an emergency room physician and served as the plaintiffs Regional Medical Officer in 2003 and 2004, and as the Medical Director at Wellington. The doctor enjoyed a good relationship *778 with Wellington’s Chief Executive Officer (“CEO”) and managing director, who were one and the same.
On June 16, 2004, without explanation, the CEO gave the plaintiff ninety-days notice that its long-standing staffing contract with the hospital was being terminated. Two days later, the Palm Beach Post published an article that reported Clovix, a Wellington-based group of doctors, had recently made a bid to take over medical services at the Palm Beach County Jail. The doctor was the spokesperson for Clo-vix. The plaintiff had previously been unaware of Clovix, the jail contract, or the doctor’s involvement.
That day, the plaintiff wrote to the doctor, reminding him of the restrictive covenants in his contract and his fiduciary obligations to the company. Believing the doctor was actively engaged in negotiating a contract with Wellington, the plaintiff promptly demanded that he “immediately cease” such activities. The hospital was also given written notice of the restrictive covenants, and was asked to “cease and desist aiding or encouraging [the doctor] to violate the foregoing restrictive covenants.”
Over the next month, the plaintiff received information that the doctor was acting inconsistently with his role as medical director. The doctor gave notice of his resignation, but on July 29, 2004, the plaintiff terminated the doctor’s contract for cause. The plaintiff also notified the hospital that the restrictive covenant in the doctor’s 2003 employment agreement prohibited him from working at Wellington after termination of the plaintiffs contract. Within days of those letters, the plaintiffs Vice-President was told that the doctor had offered positions with a new competitor to all of the plaintiffs Wellington-based physicians.
Before the transition occurred, and prior to the end of the ninety-day notice period, the CEO rescinded the termination of the plaintiffs contract. That action resulted from a call made by the plaintiffs parent company to the CEO’s boss, a senior Vice-President at Wellington. The CEO was instructed to correct the situation. However, the CEO wanted the doctor to remain as the emergency department medical director so he conditioned the plaintiffs reinstatement on rehiring the doctor.
The plaintiff proposed a new employment agreement with the doctor, which he signed on August 18, 2004. That contract contained extensive new provisions, which included the doctor’s duty to protect and preserve the relationship between the plaintiff and the hospital and other physicians who worked for the plaintiff. It also required the doctor to provide written reports of meetings, problems, and discussions bearing on those relationships. The 2004 employment agreement contained a restrictive covenant emphasizing the doctor’s duty of loyalty and a two-year non-compete clause, which prohibited him from working at Wellington or interfering with physician relationships during the noncom-pete period.
The noncompete clause provided:
7. Restricted Activities: You acknowledge that an essential part of this Agreement from Our perspective is that You are to work in a cooperative fashion with Us and for You not to pursue the Emergency Department staffing agreement with Wellington Regional Medical Center under any circumstances during the term of this Agreement and for two (2) years thereafter .... and You agree not to negotiate a contract to perform or perform Services at any hospital or Facility with whom We or our Affiliate [Team Health] is actively negotiating an agreement for the performance of Ser *779 vices. During this Agreement and for two years after it ends, You also agree not to do anything competitive or adverse to Us or which would adversely affect Our relationship with any hospital, physician or person with whom We contract, any other entity or Our employees.
Paragraph 8 provided for enforcement of the Agreement through an injunction.
Approximately a year later, the Wellington CEO notified the plaintiff that its contract would terminate on October 31, 2005, unless other contractual arrangements were made. The CEO admitted he discussed the decision with the doctor although he could not recall the extent of their discussions. The doctor never reported those discussions to the plaintiff. On November 1, 2005, another provider took over Wellington’s emergency department staffing with the doctor at the helm, never missing a shift in the transition.
The plaintiff filed suit soon thereafter to enforce the 2004 employment agreement, alleging the doctor had secretly been working with the new provider to induce Wellington to replace the plaintiff. During discovery, the CEO took full responsibility for the decision to replace the plaintiff with the new provider, insisting the doctor had not been involved.
The plaintiffs theory was that the doctor and new provider played a significant role, culminating in the termination of the plaintiffs contract. The Second Amended Complaint named the doctor and the new provider as defendants. The plaintiff alleged claims for breach of the restrictive covenants in the 2004 employment agreement, conspiracy, and breach of fiduciary duty. The plaintiff requested injunctive relief, damages, and attorneys’ fees against the doctor. The plaintiff alleged claims for conspiracy, aiding and abetting the doctor’s breach of fiduciary duty, and tortious interference with a business relationship against the new provider, seeking damages and injunctive relief.
The defendants moved for summary judgment on the Amended Complaint in 2007. A predecessor judge denied the motion. In early 2008, the case was transferred to the Complex Litigation Unit and assigned to a successor judge.
The defendants again moved for summary judgment. Although the plaintiff did not file a written cross-motion, counsel argued in its response and at the hearing that the plaintiff was entitled to partial summary judgment on liability on the breach of fiduciary duty, breach of contract, and tortious interference claims. After hearing extensive argument, and over the plaintiffs objection, the trial court granted the defendants leave to file a reply memorandum. In lieu of a reply, however, the defendants filed a lengthy, substantive proposed order. The court subsequently permitted additional post-hearing memo-randa.
The day before those submissions were due, the court entered an order simply denying the motion. Approximately three weeks later, the defendants moved for clarification. When the pending motion was brought to the court’s attention, it explained that disputed issues of fact precluded summary judgment.
Five weeks later, without notice or any further hearing, the court entered a new order “revisiting” its denial of summary judgment, and granting final summary judgment for the defendants. The plaintiff timely appealed, and moved to disqualify the judge from post-judgment proceedings. This appeal was held in abeyance during the pendency of the disqualification proceedings. The disqualification issue became moot as a result of an administra- *780 five order that reassigned the cases to a new judge.
On appeal, the plaintiff argues the trial court erred in granting summary judgment because genuine issues of fact remained to be determined by a jury. The defendants respond that there were no disputed facts, only unsubstantiated inferences. We agree with the plaintiff—and the trial court’s original conclusion-that summary judgment should have been denied.
We have de novo review of this summary judgment. Gomez v. Fradin, 41 So.3d 1068, 1071 (Fla. 4th DCA 2010).
[Ejvidence that raises an issue of material fact, conflicts, permits different reasonable inferences, or tends to prove issues should be submitted to the jury. In other words, “[a] motion for summary judgment should not be granted if the record reflects the existence of genuine issues of fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist.”
Briggs v. Jupiter Hills Lighthouse Marina, 9 So.3d 29, 31 (Fla. 4th DCA 2009) (quoting Walter T. Embry, Inc. v. LaSalle Nat’l Bank, 792 So.2d 567, 568 (Fla. 4th DCA 2001)).
It is well-established that “if different inferences can be reasonably drawn from the uncontroverted facts, then summary judgment is improper as a matter of law.” Balsamo v. Gruppo Ceramiche Ricchetti, S.P.A., 862 So.2d 812, 814 (Fla. 4th DCA 2003) (citing Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996)). This is a case where those inferences can be drawn.
Perhaps the most significant evidence concerned the noncompete provisions of both employment agreements and the doctor’s involvement with Clovix to perform services at the jail, his close communications with the Wellington CEO, the withdrawal of the 2004 termination of the plaintiff conditioned upon the doctor being rehired, and the ultimate continuation of the doctor’s services despite the termination of the plaintiffs contract in 2005. A jury could glean from these facts that the defendants collaborated to terminate the plaintiffs contract while maintaining his employment at the hospital.
One significant piece of evidence was an email from the new provider to the doctor for his “approval” of its proposal to Wellington. A jury might find that the doctor had a fiduciary duty to disclose this information to the plaintiff, and that his failure to do so breached that duty. See Capital Bank v. MVB, Inc., 644 So.2d 515, 520 (Fla. 3d DCA 1994).
The plaintiff argues that the restrictive covenants were designed to protect its substantial relationship and ongoing goodwill with Wellington; the substantial investments (both monetary and specialized training) it made in the doctor; the confidential, proprietary, and trade secret information that was shared with the doctor; and the plaintiffs relationships with its employees. It further argues that the facts support inferences to prove the various claims alleged.
It is neither our role nor that of the trial court to make those factual determinations. That role belongs to the fact finder. In this case, that fact finder is the jury. The trial court erred when it failed to limit its ruling to whether there were genuine issues of fact, and undertook the role of fact finder.
The plaintiff makes two additional arguments: (1) the trial court erred in finding an accord and satisfaction; and (2) the plaintiff was denied due process under Local Rule 7. We agree that the trial court *781 improperly used the defense of “accord and satisfaction” as a basis for summary judgment because the defendants waived the defense by not raising it in their Answer. Wolowitz v. Thoroughbred Motors, Inc., 765 So.2d 920, 923 (Fla. 2d DCA 2000). We need not reach the due process argument as the existence of genuine issues of material fact defeat the defendants’ motion for summary judgment.

Reversed.

STEVENSON and CIKLIN, JJ., concur.