437 So.2d 214 (1983)
POINCIANA PROPERTIES, LTD., and Sidney Speigel, As Trustee, Appellants,
v.
ENGLANDER TRIANGLE, INC., Appellee.
No. 81-1118.
District Court of Appeal of Florida, Fourth District.
September 14, 1983.
Moyle, Jones & Flanagan and Jane Kreusler-Walsh and Larry Klein, West Palm Beach, for appellants.
H. Laurence Cooper, Jr., of O'Connell, Cooper, Parrish & McBane, P.A., West Palm Beach, for appellee.
HURLEY, Judge.
This appeal challenges the trial court's conclusion that part performance of an unsigned commercial lease agreement removed the lease from the operational effect of the statute of frauds. We affirm.
Englander Triangle, Inc. operates a furniture business under the name of Worrell's. In 1974, Worrell's (the tenant) leased commercial space from Poinciana Properties, Ltd. (the landlord) in the Royal Poinciana Plaza, a shopping plaza in Palm Beach. The lease was for unit 301, which included space on the first and second floors, and unit 305, a first floor location. The lease expiration date was October 31, 1979.
From January to July of 1979, the parties engaged in negotiations to renew the lease. The landlord wanted to rent the upstairs portion of unit 301 to a brokerage firm and, therefore, the tenant agreed to rent unit 307 in addition to unit 305 and thus locate the entire store on the first floor. The negotiations culminated on July 19, 1979, in the following commitment letter which was prepared and signed at the landlord's request.
This letter constitutes a commitment between Englander Triangle and Poinciana Properties, Ltd., for Store Number 301, 305 and 307 in the Royal Poinciana Plaza, term of which is to start immediately upon occupancy and will terminate in June, 1988, subject to terms and covenants *215 of the lease as discussed today, to be completed and executed on or about July 27, 1979.
At trial the landlord's representative testified that the conditions of the July agreement were put into effect immediately. Although the existing lease was not due to expire until October 31st, the tenant vacated the upstairs portion of unit 301 and moved into unit 307. This caused the tenant to purchase carpeting and hire a designer to rearrange the entire store's floor plan. Additionally, the tenant expended monies for a large display platform. By acceding to the landlord's desire to rent the upstairs portion of unit 301 to a brokerage firm, the tenant  even with the additional first floor space in unit 307  ended up with a net loss of 2,500 square feet of floor space. This necessitated a change in the tenant's "merchandise mix." The selection of bedroom and dining room furniture was reduced in favor of an increase in living room furniture. Significantly, most of the living room furniture was upholstered. This caused the tenant's order for twenty-five to thirty thousand dollars of living room furniture to be classified "non-cancellable." Furthermore, the tenant testified that in reliance on the parties' July agreement, efforts to find an alternate commercial location in Palm Beach were abandoned.
Both landlord and tenant testified that all negotiations were completed by July 19, 1979, the date of the commitment letter. A formal contract was not signed, however, because the landlord's draft mistakenly included a provision which did not reflect the parties' agreement. Testifying at trial, the landlord's representative said "had we had an actual lease document clean and typed on July 19th, then that would have been signed."
On October 1, 1979, Sidney Speigel, as trustee, took title to the Royal Poinciana Plaza. From the outset he maintained that the lease had not been renewed; the tenant took the opposite position. As indicated, the trial court ruled for the tenant, finding sufficient part performance to remove the parties' oral agreement from the operative effect of the statute of frauds.
Florida's statute of frauds, section 725.01, Florida Statutes (1981), provides that an action may not be brought on a contract for the lease of real property for a period longer than one year unless the contract, or a memorandum thereof, is in writing and signed by the party to be charged. "A statute of frauds makes no exception in favor of a plaintiff who has rendered his own performance... . But by a course of judicial development, it has become established law for equity courts to hold the statute inapplicable when a contracting party has partially performed his share of the bargain." Crossman v. Fontainbleau Hotel Corp., 273 F.2d 720, 724 (5th Cir.1959).
Normally, to prevail on a theory of part performance a tenant must establish that he "has been put into possession and has paid rent and the lessor has accepted it, under the terms agreed on, where such terms are clearly and definitely alleged and proven." Pedrick v. Vidal, 95 Fla. 952, 116 So. 857 (1928). In the case at bar, however, the successor landlord refused to accept the tendered rent which was then deposited in the registry of the court. Consequently, the trial court considered the broader test which Florida courts have employed in suits for specific performance of an oral contract for the sale of real estate. To prevail on a theory of part performance under this test, the plaintiff must establish by "clear, competent and satisfactory" proof, see Muhtar v. Goldman, 419 So.2d 383 (Fla. 3d DCA 1982), the following elements:
(1) payment of consideration, (2) possession by the vendee, (3) installation of "valuable and permanent improvements" by him or "the presence of such facts as would make the transaction a fraud upon the purchaser if [the contract] were not enforced."
Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888, 891 (1944); Miller v. Murray, 68 So.2d 594 (Fla. 1953).
With respect to the first element of the test, there was a dispute in the case at *216 bar as to the precise amount of rent tendered by the tenant. Nonetheless, there was abundant proof from which the trial court could conclude that the tenant fulfilled its rent obligation. As for the second element, the testimony disclosed that the landlord gave the tenant the key to unit 307, the new space on the first floor, a day or two after they signed the July 19th commitment letter.[1] Shortly afterwards the tenant occupied unit 307.
On appeal, the parties centered their attention on the third element of the test: installation of valuable and permanent improvements or the presence of such facts as would make the transaction a fraud upon the tenant if the lease were not enforced. In our view, the unique facts of this case make it unnecessary to dwell on the first part of the clause, i.e., quantification of the value of the improvements and a determination of their permanency. Here the trial court had the unusual experience of receiving testimony from a landlord (the original) and a tenant who were in general agreement. Their testimony provided ample justification for the tenant's course of conduct subsequent to the July 19th commitment letter. It demonstrated that the tenant materially and justifiably changed his position in reliance on the landlord's oral agreement. For example, the tenant moved into the new space, placed a substantial order for upholstered, non-cancellable merchandise, expended monies to improve the new location and abandoned existing efforts to locate another commercial site within the Town of Palm Beach. Under these facts, not to enforce the lease against the original landlord, would be to permit the perpetration of a fraud upon the tenant. In our view, the successor landlord stands in the shoes of his predecessor. He is bound by his agreements and obligations. Consequently, we affirm the trial court's finding of clear and positive evidence to take the lease out of the statute of frauds and to enforce it between the parties to this cause. The judgment on appeal is
AFFIRMED.
ANSTEAD, C.J., and WALDEN, J., concur.
NOTES
[1] The July 19, 1979 commitment letter designated the parties, the length of the rental term and the space to be leased, but it omitted the rental rate, a vital element to the transaction. Therefore, it was insufficient to satisfy the requirement of the statute of frauds. Mann v. Thompson, 100 So.2d 634 (Fla. 1st DCA 1958).