624 So.2d 313 (1993)
JACKSONVILLE PORT AUTHORITY, CITY OF JACKSONVILLE, Appellant,
v.
W.R. JOHNSON ENTERPRISES, INC., d/b/A Johnson/American, Appellee.
No. 92-2288.
District Court of Appeal of Florida, First District.
August 30, 1993.
Rehearing Denied October 14, 1993.
Charles W. Arnold, Jr., Gen. Counsel, Bruce Page, Asst. Gen. Counsel, Jacksonville, for appellant.
Stephen C. Bullock and Alan K. Ragan of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellee.
WOLF, Judge.
Jacksonville Port Authority (JPA) challenges a final judgment based on a jury verdict, finding that JPA breached its contract with W.R. Johnson Enterprises, Inc. (appellee). JPA asserts a number of issues on appeal, one of which we find dispositive: whether the trial court erred in failing to grant JPA's motion for directed verdict where the evidence failed to demonstrate mutual agreement on essential elements of the purported agreement. We find merit as to this point and reverse.
The dispute arises in connection with a project to inspect and repair one of JPA's container cranes used to off-load ships.
The project was considered to be an emergency and, thus, JPA did not go through a formal bidding process, but instead authorized its purchasing agents to spend up to $1,250,000 in order to complete the project. The fourteen-month project, begun in April *314 1989 and completed in June 1990, was to be done in three phases. Phase I involved a survey and field inspection of the crane and would involve preparation of the necessary specifications and estimates for the repair. Phase II involved the manufacture of the necessary new and replacement parts. Phase III involved installation of the new parts, some repainting, and certification of the crane (ultimately phase III also involved raising the crane 10 feet in order to accommodate large ships).
In April 1989, JPA established a relationship with three companies in order to complete the project. Alliance Machinery Company, the original equipment manufacturer, was involved with the engineering evaluation and design services. Dawe and Son, a heavy machinery specialty consulting firm, was to be responsible for project oversight and specialty advisory services. Johnson, a local industrial machinery contractor, was to provide qualified tradesmen, tools, and equipment necessary for the crane survey and later, for the actual repairs.
It is undisputed that during the early stages of the project, all the parties expected appellee to perform the phase I inspection and phase III installation work. Appellee asserts that in light of the general understanding and discussions of the parties as well as JPA budgeting $1,250,000 for completion of all three phases of the project, there was a binding agreement between JPA and appellee in April of 1989. This assertion is not consistent with the evidence presented.
On May 22, 1989, JPA asked that each contractor submit written proposals for the "work that can reasonably be estimated at this time." Written proposals were submitted by all, and services purchase orders (SPO's) were issued by JPA to begin the project. Johnson submitted written "specifications and estimates" for the field inspection or phase I of the project. Johnson's proposal to do phase I for $219,450 was accepted by JPA when JPA issued SPO number 015 requiring Johnson to "provide all labor, materials and equipment necessary to perform the crane conditions survey of the Alliance crane in conjunction with direction from Alliance Machine Company and Dawe & Sons, per the attached proposal." SPO number 015 specified the price as $219,450.
All parties agree that these actions were consistent with the practice of JPA during this project which was not to specifically formalize the relationship through contract, but rather to proceed through SPO's.
Whether or not to proceed with phases II and III and the scope of the work involved in these phases depended on the results of the phase I inspection. Near the end of phase I, Alliance Machine Company found that the crane appeared sound and "worthy of the requested modifications."
JPA made the decision to proceed with the project and issued SPO numbers 033 and 050 to Alliance Machine Company in response to their written proposals. SPO number 033 on August 11, 1989, authorized Alliance to work on major components, including the main hoist, for $314,725, and SPO number 050 on October 10, 1989, authorized Alliance to work on other components for $285,870. Phase II included some repairs necessarily performed on the crane itself, and appellee was responsible for these field repairs.
In late July and August of 1989, the first estimates of the scope of the work involved in phase III were presented. At that time, appellee informed JPA of the cost of proceeding with phase III. On August 31, Ernest Dawe, the project manager, estimated that the cost of appellee's installation work would be $103,450. Evidently, additional work was added to the project. On November 2, 1989, appellee sent a letter to Mr. Dawe stating that recently received engineering information from Alliance Machine Company would require a reassessment of Johnson's proposed costs to do the phase III work. On November 27, 1989, Johnson sent to the Project Manager Dawe a detailed cost breakdown for portions of the work to be done and stated that "our last quotation offered was in error."
On January 16, 1990, Johnson sent another letter, this one to JPA's engineering director, stating that the earlier cost estimates for phase III work were founded on incomplete information, and the costs would be reestimated "in the next couple of days." Johnson's updated proposal for phase III work was a total price of $163,667. This offer was submitted January 18, 1990. The proposed price was higher than the $103,450 estimated *315 in August, and JPA asked Johnson to reevaluate the proposal. In response, Johnson sent a letter on February 12, 1990, again to JPA's engineering director, expressing the hope that their reduced price of $139,117, plus some additional fees, would be accepted.
In the meantime, JPA's engineering director asked United Construction Services, Inc. to estimate and bid on phase III machine installation. On January 31, 1990, United Construction Services, Inc. quoted a price of $110,000 for the same services Johnson had bid for $163,667. United Construction Services, Inc. had already bid $171,900 for the work to raise the crane 10 feet. On February 22, 1990, JPA issued SPO number 077 to United Construction for both the raising of the crane and the phase III machine installation work originally intended for Johnson. Appellee claimed JPA breached their agreement by awarding the phase III work to another contractor.
While it is not necessary that all details of an agreement be fixed in order to have a binding agreement between parties, if there has been no agreement as to essential terms, an enforceable contract does not exist. Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992); Blackhawk Heating and Plumbing Co., Inc. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974).
So long as any essential matters remain open for further consideration, there is no completed contract. In order to create a contract it is essential that there be reciprocal assent to a certain and definite proposition.
Mann v. Thompson, 100 So.2d 634, 637 (Fla. 1st DCA 1958). Failure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement. See Blackhawk Heating and Plumbing Co., Inc. at 408, citing Truly Nolen, Inc. v. Atlas Moving and Storage Warehouse, Inc., 125 So.2d 903 (Fla. 3d DCA 1961), cert. discharged, 137 So.2d 568 (Fla. 1962).
Where the parties are continuing to negotiate as to these essential terms, there can be no meeting of the minds. Central Properties, Inc. v. William H. Robbinson, 450 So.2d 277, 280 (Fla. 1st DCA 1984), modified, 468 So.2d 986 (Fla. 1985).
In the instant case, while a general understanding may have existed in April of 1989 concerning appellees' continued participation as to phase III of the project, clearly no enforceable contract existed. The scope of the work contemplated in phase III was not presented until late July of 1989. Additions continued to be made after that time. There was never an agreed-upon price between the parties. Correspondence between the parties indicated that negotiations between the parties as to these essential terms were continuing as late as January 1990. Letters and correspondence from appellee confirm that it still felt that it had not been awarded these projects, but was still seeking acceptance of its proposals. Under these circumstances, no binding agreement existed between the parties. We, therefore, reverse that portion of the judgment awarding damages against JPA for breach of contract.[1]
SMITH and MICKLE, JJ., concur.
NOTES
[1] While Johnson also asserts that a contract was created as a result of partial performance, these allegations have greater weight in cases involving defining vague terms within a contractual relationship which is found to have existed, in pursuance of damages involving a claim under quantum merit or in removing an oral agreement from the prohibition of the statute of frauds. Blackhawk, 302 So.2d at 408, 409, and Poinciana Properties Ltd. v. Englander, 437 So.2d 214 (Fla. 4th DCA 1983); rev. denied, 447 So.2d 887 (Fla. 1984).