**Opinion issued February 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00145-CV

———————————

**HELITRANS COMPANY, Appellant**

**V.**

**ROTORCRAFT LEASING CO., LLC, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 39003**

---

## MEMORANDUM OPINION

Helitrans Company appeals the trial court's judgment rendered in favor of Rotorcraft Leasing Co., LLC, on Helitrans's breach of contract action. In eight issues, Helitrans contends that the trial court erred in concluding that Rotorcraft did not breach its agreement with Helitrans, and that it abused its discretion in denying

Helitrans's motions to compel discovery. In a cross-point, Rotorcraft asserts that the trial court erred in denying its request for attorneys' fees under the agreement. We affirm in part and reverse and remand in part.

## Background

### A. *Factual and Procedural History*

Helitrans and Rotorcraft provide offshore commercial helicopter services to the oil and gas industry in and around the Gulf of Mexico. In February 2007, the two companies entered into an Asset Purchase Agreement (APA) under which Rotorcraft purchased all of Helitran's assets, namely, Helitrans's sixteen aircraft, customer contracts, commercial operators' licenses, and inventory, as well as assumed Helitrans's bases. As part of the APA, Rotorcraft also purchased HMC Helicopter Service, Inc., a small independent helicopter company, from Helitrans and entered into year-long consulting agreements with Helitrans's President, Greg Obert, and its Chief Financial Officer, Shane Leonard. HIG Capital, a private equity investment firm which owned 51% of Rotorcraft at the time of closing, participated in negotiating the APA on behalf of Rotorcraft.

The APA was subsequently amended three times—on March 19, 2007, April 16, 2007, and April 18, 2007. In particular, Amendment No. 1 to the APA, characterized as an "earn out" provision, provides, in relevant part:

> The Purchase Price shall consist of $15.25 million of cash at Closing, less the Escrow amount, plus up to $750,000 to be earned over a two-

2

year period if the Business achieves aggregate revenues of at least $30 million for the 24 months after Closing . . . .

In June 2006, King Flight Service, LLC, sued Helitrans to recover money Helitrans allegedly owed for services provided by King Flight, unrelated to the APA. King Flight subsequently joined Rotorcraft as a defendant, alleging that Rotorcraft had assumed Helitrans's corporate liabilities and was liable for Helitrans's debt to King Flight. Rotorcraft filed a cross-claim against Helitrans for defense and indemnity under the APA related to the King Flight litigation. Helitrans filed a counter-claim against Rotorcraft alleging breach of contract and seeking specific performance, and later amended it to add claims of fraud and promissory estoppel and seeking reformation of the APA and a declaratory judgment. King Flight and Helitrans settled. Helitrans's breach of contract and fraud claims against Rotorcraft proceeded to trial.

Helitrans had served Rotorcraft with requests for production and a subpoena duces tecum seeking documents reflecting the revenue Rotorcraft earned from its purchase of Helitrans. Dissatisfied with Rotorcraft's responses to its discovery requests, Helitrans filed several motions to compel. Prior to trial, the court granted Rotorcraft's no-evidence motion for partial summary judgment dismissing Helitrans's claims for promissory estoppel and reformation. The case was tried to the court.

## B. Evidence Presented at Trial

### 1. Amendment No. 1 to the APA

The parties presented conflicting interpretations of the earn-out provision in Amendment No. 1 of the APA. Helitrans argued that the provision allowed it to earn a prorated amount, up to a maximum of $750,000, depending on the revenue generated by the assets Rotorcraft purchased from Helitrans within two years of the sale. According to Helitrans, while $750,000 was the maximum amount it could earn under the APA, Helitrans was entitled to a prorated payment up to that figure despite the fact that there was no minimum amount drafted into the provision. Obert testified that he understood the provision to be a sliding scale, depending on the earnings generated by the acquired assets, up to $750,000.

Rotorcraft argued that the provision at issue created a condition precedent, making payment of the $750,000 contingent on the assets achieving an agreed benchmark of $30 million in profits within two years with no payment due if that did not occur. Rotorcraft's President, Rodger Bagwell, testified that he understood the provision to mean exactly that. Jeff Zanarini, Managing Director at HIG Capital, testified that the $750,000 in the provision was not a tiered payment. He and Fabian de Armas, who was also with HIG, both testified that they never told Leonard or Obert that there would be prorated payments if the assets did not generate $30 million in the two years after closing. Zanarini further testified that if

4

a prorated payment had been contemplated, it would have been written out in detail in the amendment itself. Rotorcraft introduced evidence showing that the total revenue generated by the assets purchased under the APA during the two years after the closing was $23,060,878.71.

## 2. *Helitrans's Breach of Contract Claims*

Helitrans alleged that Rotorcraft had breached the APA by raising the rates of Helitrans's customers and closing some of its bases of operation. However, on cross-examination, Obert and Leonard admitted that Rotorcraft did not promise that it would never raise rates or change the base locations of the customers acquired under the APA. Obert and Leonard also acknowledged that Helitrans itself performed annual rate evaluations, including evaluating possible rate increases, prior to the APA.

Bagwell testified that the parties had anticipated that rates would be raised following execution of the APA, and that rate increases were discussed with Obert and Leonard before the APA was finalized. HIG's Zanarini and de Armas also testified that Obert and Leonard participated in discussions regarding rate increases on multiple occasions.

In support of Helitrans's allegation that Rotorcraft had breached the APA by losing clients as a result of base closings, Leonard initially testified that he did not know prior to the closing that Rotorcraft intended to relocate or close some of

5

Helitrans's bases. However, when presented with his deposition on cross-examination, he acknowledged that he was aware before the APA was executed that Rotorcraft intended to close some of the bases.

Bagwell testified that Rotorcraft closed several bases because it had existing bases nearby and that no customers were lost a result of these base closures. Helitrans's Beaumont base was closed for reasons of efficiency and safety and no customers were lost as a result of that base closure. According to Bagwell, the only customer that decided not to continue flying with Rotorcraft because of a base closure was Evans Operating. Bagwell testified that Evans Operating never alleged that Rotorcraft breached its contract, and that Rotorcraft continued to fly for Evans from time to time.

At the conclusion of trial, the court determined that (1) the aggregate revenue provision was unenforceable, (2) Rotorcraft did not breach the APA or commit fraud against Helitrans, and (3) Rotorcraft was not entitled to attorneys' fees or indemnification under the APA. The trial court signed its judgment on October 30, 2012. Helitrans filed a motion for new trial which the trial court denied. The court subsequently filed findings of fact and conclusions of law.

## Discussion

At the outset, we note that in the Statement of Facts portion of its brief, Helitrans challenges the legal and factual sufficiency of the trial court's findings of

fact 4-5, 13-14, 16-18, 20-26, 29-31, 34-37, and 41-57.  Helitrans also challenges the trial court's conclusion of law 16 and every conclusion of law concerning "any revenue Rotorcraft alleges the assets generated," "the terms of the underlying contracts not being in evidence," and the court's determination that "Rotorcraft properly or fully assumed the obligations of Helitrans after the execution of the APA."  However, other than summarily reciting in its Statement of Facts which of the court's findings and conclusions it challenges, Helitrans does not provide argument demonstrating that the trial court's findings of fact were without evidentiary support in the record or that its conclusions of law were erroneous.

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  TEX. R. APP. P. 38.1(i).  A party asserting error on appeal bears the burden of showing that the record supports the contention raised and of specifying the place in the record where matters upon which it relies or of which it complains are shown. *Sisters of Charity of Incarnate Word, Houston, Tex. v. Gobert*, 992 S.W.2d 25, 31 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  We are not required to sift through a voluminous record without guidance from the appellant to determine whether an assertion of error is valid.  *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see* TEX. R. APP. P. 38.1(f),

7

(h). We conclude that Helitrans has failed to adequately brief its challenge to the trial court's findings of fact and conclusions of law.

## A. Breach of Contract Claim

Helitrans contends that Rotorcraft breached the APA in two ways. First, it argues that Rotorcraft breached its obligation to pay Helitrans under the earn-out provision of Amendment No. 1 to the APA. Second, it asserts that Rotorcraft failed to assume Helitrans's obligations as required under section 1.2 of the APA. Florida law will be applied pursuant to the choice-of-law provision in the APA.

### 1. Provision

In its third and fourth issues, Helitrans contends that the trial court erred in concluding that the earn-out revenue provision in the APA is unenforceable and, alternatively, ambiguous. In its eighth issue, it argues that the evidence is legally and factually insufficient to support the court's conclusion that Rotorcraft did not breach this provision of the APA. Because these issues are interrelated, we address them together.

Amendment No. 1 of the APA, which sets out the provision in dispute, provides, in relevant part:

1. The Purchase Price shall consist of $15.25 million of cash at Closing, less the Escrow amount, plus up to $750,000 to be earned over a two-year period if the Business achieves aggregate revenues of at least $30 million for the 24 months after Closing . . . .

8

In its judgment signed October 30, 2012, the trial court found that

> Rotorcraft Leasing Co., LLC did not breach Amendment No. 1 to the Asset Purchase Agreement by failing to pay Helitrans Company an earn out. The provision referred to by the parties as the "aggregate revenue" clause is unenforceable as determined by this Court. The provision merely requires Rotorcraft Leasing Co., [LLC] to pay some amount, up to $750,000.00, after the purchased assets achieved at least $30 million in revenues two years following the execution of the Asset Purchase Agreement. This amount could be nothing. Thus, the provision is ineffective and does not create a binding contractual obligation between the parties regardless of the aggregate revenue achieved by the purchased assets over the two years following the execution of the Asset Purchase Agreement.

Helitrans argues that Amendment No. 1 "clearly embodies a prorationed [sic] earnout as the Business' aggregate revenues reached toward $30 million; otherwise it would have included specific benchmarks for lower business revenue goals. The formula in this case provides for an earnout payment of $576,521.97 when the Business revenues reach $23,060,878.71, without the need for any additional terms as shown below . . . ." We find Helitrans's argument unpersuasive.

To be enforceable, an agreement must be sufficiently specific and reflect the agreement by the parties to all essential terms, *see Bergman v. DeIulio*, 826 So. 2d 500, 503 (Fla. Dist. Ct. App. 2002), and a court must interpret a contractual provision using the plain meaning of the words. *See Interfirst Fed. Sav. Bank v. Burke*, 672 So. 2d 90, 92 (Fla. Dist. Ct. App. 1996). Courts should not interpret contracts in a manner that extends or enlarges the obligations of a contracting party

9

beyond the plain meaning of the language used in the contract itself. *Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 207 (Fla. Dist. Ct. App. 2007). The failure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement. *Jacksonville Port Auth. v. W.R. Johnson Enters., Inc.*, 624 So. 2d 313, 315 (Fla. Dist. Ct. App. 1993) (citing *Blackhawk Heating and Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404 (Fla. 1974)). Further, a court may not supply material contract terms which the parties have omitted. *Farrell v. Phillips*, 414 So. 2d 1119, 1120 (Fla. Dist. Ct. App. 1982).[1]

Here, the provision at issue provides but one benchmark that must be reached to trigger the additional payment. As the trial court noted, this provision neither specifies the exact amount of additional payment nor provides a method of

---

[1]     1 CORBIN ON CONTRACTS § 4.3 states the rule as follows:

> In the process of negotiating an agreement, a term that is frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in money—the compensatory exchange for the subject matter of purchase. . . . If the parties provide a practicable method for determining this price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. [Footnote omitted.] There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the agreement is too indefinite and uncertain for enforcement. [Footnote omitted.]

*Id.* at 567 (Joseph M. Perillo, rev. ed. 1993).

calculation for such payment in the event such a payment is triggered, and no terms or formulas are provided elsewhere in the amendments or the APA. To find that the provision provides for a prorated earn-out or formula would require the trial court to rewrite the provision which it is not permitted to do. *See Edgewater Enters., Inc. v. Holler*, 426 So. 2d 980, 982 (Fla. Dist. Ct. App. 1982).

In support of its argument that the provision is a prorated earn-out provision, Helitrans relies on *Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.*, No. 03-09-00386-CV, 2011 WL 350466 (Tex. App.—Austin Feb. 4, 2011, no pet.) (mem. op.). In that case, Hebert acquired the assets of Tremur, a construction company, pursuant to the asset purchase agreement executed by the parties. *See id.* at *1. The agreement included a provision detailing additional payments, called contingent price payments, to be made on the first three anniversaries of the closing if specified thresholds for gross revenue were met. *Id.* at *2.

In its opinion, the *Hebert* court noted that the maximum contingent price payment available for the first year ranged from $55,950 if the company had gross revenue of at least $2 million up to $447,600 if the company achieved gross revenues of at least $5 million during the first year it was operated by Hebert. *See id.* Thus, the parties clearly contemplated a "floor," i.e. $55,950, and there is nothing in *Hebert* reflecting that the earn-out payments between the defined amounts were prorated. Notably, the gross revenues for the first year were $6

11

million and Hebert did not dispute that it owed the $447,600 contingent price payment to the appellees. *See id*. at *5, 11. For these reasons, *Hebert* lends no support to Helitrans's position.

Helitrans also urges us to consider the testimony of its expert, Dr. Kenneth Lehrer, regarding his interpretation of the provision and the amount owing to Helitrans under the provision. The trial court granted Rotorcraft's pretrial motion to exclude Dr. Lehrer's testimony regarding his interpretation of the contract but it allowed him to testify as an economist. It is well settled that expert testimony is not allowed on questions of law. *Briggs v. Jupiter Hills Lighthouse Marina*, 9 So. 3d 29, 32 (Fla. Dist. Ct. App. 2009). Ordinarily the interpretation of a written contract is a matter of law to be determined by the court. *DEC Elec., Inc. v. Raphael Const. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). The trial court properly excluded Dr. Lehrer's testimony as to the interpretation of the APA provision.

If the parties had intended to create a prorated earn-out provision, they could have done so in the APA. This was not done. Courts cannot interpret contracts in a manner that extends or enlarges the obligations of a contracting party beyond the plain meaning of the language used in the contract itself. *Leesburg Cmty. Cancer Ctr.*, 972 So. 2d at 207. We conclude that the trial court properly determined the

12

provision in Amendment No. 1 to be unenforceable as a matter of law. We overrule Helitrans's third and eighth issues.[2]

## 2. Assumption of Post-Closing Obligations

In its fifth, sixth, and seventh issues, Helitrans challenges the trial court's conclusion that Rotorcraft fulfilled its obligations under the customer contracts it acquired from Helitrans, that there were no customer contracts required to be assumed under the APA, and that Rotorcraft did not breach section 1.2 of the APA.[3]

Section 1.2 provides, in pertinent part:

Assumed Obligations:  At the closing, the Purchaser shall assume and agree to pay, satisfy, perform and discharge as the same shall become due only the liabilities of the Seller, including all post-Closing obligations under existing Contracts (other than obligations or liabilities as the result of the breach of any such Contract prior to the Closing Date) of the Sellers listed in Schedule 1.2(a) hereto (the "Assumed Obligations"), pursuant to an Assumption Agreement substantially in the form of Exhibit 1.2(a) hereto.

The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Sulkin v. All Florida Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. Dist. Ct. App. 2006) (quoting *J.J. Gumberg Co. v. Janis Servs.,*

---

[2]  Because we conclude that the trial court properly found the provision to be unenforceable, we do not reach Helitrans's fourth issue related to the trial court's conclusion that the provision is, in the alternative, ambiguous. *See* TEX. R. APP. P. 47.1 (stating that appellate court need only address every issue necessary for final disposition of the appeal).

[3]  These issues are incorrectly enumerated in Helitrans's brief as issues 5, 5, and 6. For the sake of accuracy, we refer to these issues as 5, 6, and 7.

*Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003) (internal citation omitted). In its brief, Helitrans argues that Rotorcraft failed to fulfill its obligations under the customer contracts acquired under the APA because it raised the contractual rates and closed a number of Helitrans's bases and, in doing so, breached section 1.2 of the APA.

In contrast to the direct examinations of Obert and Leonard, Leonard acknowledged during cross-examination that Rotorcraft did not promise that it would never raise rates on those customers acquired under the APA. Obert and Leonard also testified that Helitrans itself performed annual rate evaluations of its customers' contracts prior to the APA, which contemplated possible rate increases.

Bagwell testified that rate increases were discussed with Obert and Leonard before the APA was finalized. Zanarini and de Armas testified that Obert and Leonard were aware of Rotorcraft's intention to raise rates on some of the customer contracts and that Obert and Leonard participated in discussions regarding rate increases on multiple occasions.

With regard to base closures, Leonard acknowledged that he was aware before the APA was executed that Rotorcraft intended to close some of its bases. Bagwell testified that several bases were closed because Rotorcraft had existing bases nearby, and that no customers were lost as a result of these closures. According to Bagwell, Evans Operating, the only customer that decided not to

14

continue flying with Rotorcraft because of a base closure, never alleged that Rotorcraft breached the contract and continued to fly with Rotorcraft on occasion even after terminating its contract.

As the trier of fact, it was up to the trial court to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Shaw v. County of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). Here, the trial court had the opportunity to hear the witnesses and to resolve conflicts and inconsistencies in the testimony. Based on our review of the record, we find that there was sufficient evidence to support the trial court's determination that Rotorcraft fully assumed its obligations and that Rotorcraft did not breach any of the underlying contracts. We overrule Helitrans's fifth and seventh issues.[4]

## B. Motions to Compel

In its first and second issues, Helitrans contends that the trial court abused its discretion when it denied Helitrans's motions to compel the production of (1) Rotorcraft's audited financials and tax returns during the years when Helitrans's

---

[4] In light of our disposition of Helitrans's fifth and seventh issues, we need not address Helitrans's sixth issue complaining of the trial court's determination that there were no customer contracts required to be assumed by Rotorcraft under the APA. *See* TEX. R. APP. P. 47.1.

assets were generating revenue in light of the earn-out provision between the parties, and (2) all of the contracts and customer names Rotorcraft had assumed under the APA executed by the parties.

We review a trial court's decision denying discovery for an abuse of discretion. *See TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *BMC Software Belgium, N.V.*, 83 S.W.3d at 800.

In February 2010, Helitrans filed a motion seeking to compel Rotorcraft to respond to Helitrans's first requests for production 1-4 and to produce documents requested in a subpoena duces tecum attached to a deposition notice for a Rotorcraft corporate representative. As relevant here, the subpoena duces tecum sought the production of (1) profit and loss statements for Rotorcraft and its affiliates for 2006, 2007, 2008, and 2009 and (2) tax returns for Rotorcraft and its affiliates for 2006, 2007, 2008, and 2009. In its motion to compel, Helitrans argued that evidence of Rotorcraft's overall revenue would show what income was generated by the acquired business and whether there were any significant changes in Rotorcraft's overall income before, during, and after its acquisition of the acquired assets.

In its response to the motion, Rotorcraft objected to these requests on the basis that they were not tailored to the assets of the APA but instead requested financial information for Rotorcraft as a whole and, as such, were unrelated to the instant litigation. Rotorcraft further argued that its tax returns and financial statements were not broken down by customer, contract, or aircraft, and would therefore be useless in computing revenue generated by the acquired assets. It also asserted that revenue information for years 2006 and 2009 were outside of the relevant two-year period following the APA and were, thus, irrelevant. The trial court denied Helitrans's motion to compel.

The record reveals that, in response to Helitrans's requests for production 1-4, seeking financial information regarding the revenue generated by the assets acquired under the APA,[5] Rotorcraft produced more than 19,000 pages of documents. Further, the documents produced by Rotorcraft in response to Helitrans's requests for production 3 and 4 were the same documents, summaries, and spreadsheets that Rotorcraft introduced at trial to establish the revenue generated by the assets and testified to at trial by Keely Guirard, Rotorcraft's accounts manager. Beyond a general assertion that it was unable to develop facts

---

[5] Specifically, Helitrans's requests sought every document reviewed by Rotorcraft upon which it based its determination that the acquired assets achieved less than $30 million for the two-year period after the execution of the APA; copies of the flight log books for all aircraft purchased from Helitrans; and all billing records produced for all flights flown using any of the aircraft purchased or for any flight completed for clients obtained from Helitrans pursuant to the APA.

relevant to the presentation of its claims, Helitrans fails to explain why the documentation produced by Rotorcraft was not responsive to its requests. Helitrans's requests for Rotorcraft's 2006–2009 tax returns and profit and loss statements for the entire company do not appear reasonably tailored to the assets acquired under the APA. We conclude that the trial court's decision to deny Helitrans's first motion to compel was not so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.

Helitrans also complains that the trial court abused its discretion in denying its second and third motions to compel (filed in November 2010 and March 2011, respectively), which were based on its first set of interrogatories and second requests for production. Helitrans argues that the trial court implicitly denied Helitrans's motions to compel when it granted Rotorcraft's motion to compel on March 29, 2011. Helitrans's discovery requests sought the production of all of the contracts and names of customers Rotorcraft had assumed under the APA executed by the parties.

Under Texas Rule of Appellate Procedure 33.1(a)(2)(A), error may be preserved when the trial court rules on a motion either expressly or implicitly. *See* TEX. R. APP. P. 33.1(a)(2)(A). "A ruling is implicit if it is unexpressed but capable of being understood from something else." *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.—San Antonio 2000, no pet.). Further, "[w]hen

18

parties present cross-motions that are opposed and mutually exclusive, an order that grants one motion may implicitly deny the other." *Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

We find nothing in the record showing that the trial court ruled, either explicitly or implicitly, on Helitrans's second and third motions. Helitrans's motions to compel and Rotorcraft's motion to compel Helitrans to supplement its discovery responses are neither opposed nor mutually exclusive and, therefore, the trial court's order granting Rotorcraft's motion did not implicitly deny Helitrans's motions. Further, the record reflects that Helitrans did not seek a ruling on its motions at trial.[6] A party's failure to obtain a pretrial ruling on discovery disputes existing before trial begins constitutes a waiver of the issue on appeal. *See Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993); *Martin v. Comm. Metals Co.*, 138 S.W.3d 619, 623 (Tex. App.—Dallas 2004, no pet.). We overrule Helitrans's first and second issues.

---

[6] Helitrans raised the issue of these motions to compel in its two motions for new trial. However, its motions for new trial are insufficient to preserve its complaints regarding the motions to compel. *See Hallett v. Houston Nw. Medical Ctr.*, 689 S.W.2d 888, 890 (Tex. 1985) ("A party cannot wait until the trial is finished, then seek to reverse an unfavorable verdict by complaining of an error which the trial court could have corrected had it been timely informed of the error.").

## C. Rotorcraft's Claims for Attorneys' Fees

In a cross-claim, Rotorcraft contends that the trial court erred by refusing to award it (1) the fees expended in the underlying indemnity case with King Flight and (2) the fees incurred in defending against Helitrans's claims under the APA.

At trial, Jason Joy, Rotorcraft's counsel during the King Flight litigation, testified that Rotorcraft incurred $50,786.26 in fees defending Rotorcraft against King Flight's claims. Rotorcraft argues that it was entitled to recover these fees for the defense of the King Flight litigation under the indemnity provision of the APA. This provision states, in relevant part, as follows:

### 11.5. Third-Party Claims

(a) The following procedures shall be applicable with respect to indemnification for third-party Claims. Promptly after receipt by the party seeking indemnification hereunder (hereinafter referred to as the "Indemnitee") of notice of the commencement of . . . (ii) any action or the assertion of any Claim, liability or obligation by a third party (whether by legal process or otherwise), against which Claim, liability or obligation the other party to this Agreement (hereinafter the "Indemnitor") is, or may be, required under this Agreement to indemnify such Indemnitee, the Indemnitee shall, if a claim thereon is to be, or may be, made against the Indemnitor, notify the Indemnitor in writing of the commencement or assertion thereof and give the Indemnitor a copy of such Claim, process and all legal pleadings. The Indemnitor shall have the right to (i) participate in the defense of such action with counsel of reputable standing and (ii) assume the defense of such action by agreeing to assume such defense within ten (10) days of transmittal of the notice of the Claim by the Indemnitee in writing . . . .

. . . .

20

(d)  An Indemnitee shall have the right to employ its own counsel in any case and the fees and expenses of such counsel shall be at the expense of the Indemnitee unless (i) the employment of such counsel shall have been authorized in writing by the Indemnitor in connection with the defense of such Claim; (ii) the Indemnitor shall not have employed counsel in the defense of such Claim after ten (10) days notice; or (iii) such Indemnitee sha;; have reasonably concluded that there may be defenses available to it which are contrary to, or inconsistent with, those available to the Indemnitor; in any of the foregoing events such fees and expenses shall be borne by the Indemnitor.

The trial court concluded that (1) Rotorcraft failed to meet the requirements set forth in the APA concerning third-party claims for which it now seeks indemnification pursuant to section 11.5 of the APA, and (2) Rotorcraft did not have any defenses available to it which were contrary to, or inconsistent with, those available to Helitrans with regard to the claims brought by King Flight in this suit, required in section 11.5 of the APA as a condition precedent to Rotorcraft's employment of its own counsel in defense of the claims brought by King Flight.

Rotorcraft acknowledges that the indemnity provision required that Helitrans be put on notice of a claim for which Helitrans may be required to defend Rotorcraft.  However, Rotorcraft argues that Helitrans, as a named defendant, was aware that Rotorcraft had been named as a defendant in the suit. Thus, Rotorcraft reasons, notice of such a claim would have been superfluous and

it was not required to give written notice of the claim against it to Helitrans. We disagree.

Section 11.5(a) states that "[p]romptly after receipt by the party seeking indemnification, of notice of the commencement of any . . . action by a third party . . . against which claim the other party to this Agreement is, or may be, required under this Agreement to indemnify such Indemnitee, **the Indemnitee shall, if a Claim thereon is to be, or may be, made against the Indemnitor, notify the Indemnitor in writing of the commencement or assertion thereof and give the Indemnitor a copy of such Claim, process and all legal pleadings"** (emphasis added). Thus, Rotorcraft was required to notify Helitrans in writing of the claims against it and provide Helitrans a copy of such claims. At trial, however, Rotorcraft's counsel Jason Joy admitted that Rotorcraft did not provide written notice to Helitrans.

The indemnity provision clearly required Rotorcraft to notify Helitrans in writing of the claims against it and provide Helitrans a copy of such claims, and the undisputed evidence is that Rotorcraft did not do so. The trial court did not err in concluding that Rotorcraft failed to meet the requirements for indemnification under section 11.5.

Rotorcraft also contends that the trial court erred in denying its request for attorneys' fees incurred in defending against Helitrans's claims under the APA.

22

Rotorcraft argues that, as the prevailing party, it was entitled to attorneys' fees under section 12.13 of the APA.

Section 12.13 of the APA states, in relevant part:

> In any legal action or other proceeding related to this Agreement, the agreements contemplated hereby the transactions contemplated hereby or thereby or the enforcement of any provision of this Agreement or the agreement contemplated hereby is brought against any party, the prevailing party in such action or proceeding shall be entitled to recover all reasonable expenses relating thereto (including attorney's fees and expenses) from the party against which such action or proceeding is brought in addition to any other relief to which such prevailing party may be entitled.

At trial, Walter Gallant, Rotorcraft's counsel in this suit, testified that Rotorcraft had incurred $190,927.56 in attorneys' fees in defending against Helitrans's claims. In its judgment, the trial court concluded that "[t]he Asset Purchase Agreement does not contain any provision that will operate in this case to award attorney's fees to Rotorcraft Leasing Co., [LLC]."

Section 12.13 provides that the prevailing party in a suit related to the APA is entitled to recover its reasonable expenses, including attorneys' fees. Because the APA does not define "prevailing party," we presume the parties intended that the ordinary meaning of the phrase applies. *See Bhatia v. Woodlands N. Hous. Heart Ctr., PLLC*, 396 S.W.3d 658, 670 n.14 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In this regard, courts have interpreted "prevailing party" to mean the party who "successfully prosecutes an action or successfully defends

23

against an action on the main issue." *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 72 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Helitrans alleged causes of action for breach of contract, fraud, fraudulent inducement, reformation, and promissory estoppel, each of which related to ether the formation of the APA or the parties' duties under the agreement. The main focus of the trial, as in this appeal, is whether Rotorcraft owed additional money, i.e., $750,000, to Helitrans under the APA. In its judgment, the trial court concluded that (1) Rotorcraft did not breach Amendment No. 1 to the APA by failing to pay Helitrans an earn out; (2) did not breach the APA by failing to assume Helitrans's obligations under section 1.2 of the agreement; and (3) did not fraudulently induce Helitrans into executing the APA. Thus, Rotorcraft successfully defended itself against these claims. Rotorcraft was the prevailing party in this case and, pursuant to section 12.13, was entitled to recover its reasonable attorneys' fees.[7] We overrule Rotorcraft's cross-claim as it relates to

---

[7] We note that section 12.13 provides that the prevailing party is "entitled to recover all reasonable expenses relating thereto (including attorney's fees and expenses) **from the party against which such action or proceeding is brought . . . .**" (emphasis added). Here, Rotorcraft is both the prevailing party and the party against which suit was brought. It is well settled that contracts should be interpreted so as to avoid an absurd result. *See Am. Employers' Ins. Co. v. Taylor*, 476 So. 2d 281 (Fla. Dist. Ct. App. 1985) (holding contracts should be interpreted so as to avoid an absurd result); *see also Sheldon v. Tiernan*, 147 So. 2d 167, 169 (Fla. Dist. Ct. App. 1962) ("Words and phrases used in contracts

its fees sought under section 11.5 of the APA, but we sustain its cross-claim as it relates to its fees sought under section 12.13 of the agreement.

## Conclusion

We affirm the portions of the trial court's judgment (1) concluding that Rotorcraft did not breach the APA or Amendment No. 1 to the agreement, (2) denying Helitrans's motions to compel, and (3) denying Rotorcraft's request for attorneys' fees under section 11.5 of the APA. We reverse the portion of the trial court's judgment denying Rotorcraft's request for attorneys' fees under section 12.13 of the APA and remand that issue to the trial court for further determination.


Russell Lloyd
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

---

should be given a natural meaning or the meaning most commonly understood in relation to the subject matter and the circumstances; and a reasonable construction is preferred to one that is unreasonable."). To construe section 12.13 to mean that Rotorcraft is entitled to recover reasonable expenses from itself is unreasonable, absurd, and would lead to results never intended or contemplated by the parties. Construction of section 12.13 consistent with the applicable law is that Rotorcraft, as the prevailing party, was entitled to recover its reasonable expenses from Helitrans.

25